**RUSING LOPEZ & LIZARDI, P.L.L.C.**
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800
Facsimile: (520) 529-4262
Todd M. Hardy; thardy@rllaz.com
California State Bar No. 223581
Michael J. Rusing; mrusing@rllaz.com
Arizona State Bar No. 006617 *Pro Hac Vice anticipated*
Attorneys for Plaintiff Sand Dollar Partners, LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sand Dollar Partners, L.L.C., an Arizona limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> Islet Sciences, Inc., a Delaware corporation; John Steel, an individual; Dan Rhodes, an individual; Jonathan Lakey an individual; Procopio, Cory, Hargreaves, and Savitch, L.L.P., a California limited liability partnership; Michael J. Kinkelaar an individual; Does 1-10, fictitious individuals; ABC Business Entities 1-10, fictitious business entities, <br> Defendants. | No. 3:12-cv-02969 MMA (RBB) <br><br> **SECOND AMENDED COMPLAINT** <br><br> Demand for Jury Trial |

Plaintiff Sand Dollar Partners, L.L.C., for its Second Amended Complaint against Defendants, hereby alleges as follows:

### PARTIES

1.      Plaintiff Sand Dollar Partners, L.L.C. ("Sand Dollar") is an Arizona limited liability company formed under the laws of the State of Arizona.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

2.      Defendant Islet Sciences, Inc. ("Islet Sciences") is a Delaware corporation which has transacted business and caused events to occur in California.

3.      Upon information and belief, Defendant John Steel ("Steel") is a resident of the State of California.

4.      Upon information and belief, Defendant Steel is and was, at all relevant times, an officer, director, stockholder, employee and/or agent of Defendant Islet Sciences.

5.      Upon information and belief, Defendant Dan Rhodes ("Rhodes") is a resident of the State of California.

6.      Upon information and belief, Plaintiff Defendant Rhodes is and was, at all relevant times, an officer, director, stockholder, employee and/or agent of Defendant Islet Sciences.

7.      Upon information and belief, Defendant Jonathan Lakey ("Lakey") is a resident of the State of California.

8.      Upon information and belief, Defendant Lakey is and was, at all relevant times, an officer, director, stockholder, employee and/or agent of Defendant Islet Sciences.

9.      Defendant Procopio, Cory Hargreaves and Savitch, L.L.P. ("Procopio") is a limited liability partnership doing business and engaged in the practice of law in the State of California.

10.     Defendant Michael J. Kinkelaar ("Kinkelaar") is a partner in Defendant Procopio.

11.     Upon information and belief, Defendant Kinkelaar is a resident of the State of California.

12.     Upon information and belief, at all times stated herein, Defendant Kinkelaar was acting within the course and scope of his duties for Defendant Procopio.

13.     Upon information and belief, at all times stated herein, Defendant Procopio was acting as an agent of Defendant Islet Sciences.

2

14.    Upon information and belief, at all times stated herein, Defendant Procopio was acting as an agent of Defendant Steel.

15.    Upon information and belief, at all times stated herein, Defendant Procopio was acting as an agent of Defendant Rhodes.

16.    Upon information and belief, at all times stated herein, Defendant Procopio was acting as an agent of Defendant Lakey.

17.    Upon information and belief, from date of incorporation of Islet Sciences, through until the Board of Directors was constituted for Islet Sciences, Defendants Steel, Rhodes and Lakey were acting as agents of Islet Sciences under the management, direction and control of Defendant Kinkelaar, the sole incorporator of Islet Sciences.

18.    Defendants Does 1-10 and ABC Business Entities 1-10 are fictitiously named Defendants who may have participated in the allegations set forth below, the identities of which are currently unknown to Sand Dollar.  The true names of any fictitious Defendants will be substituted herein when discovered.

**JURISDICTION AND VENUE**

19.    This action was originally filed in on April 20, 2012 in the Superior Court of the State of Arizona for Pima County.  On September 21, 2012, defendants removed the action to the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1332(a)(1).

20.    By stipulation of the parties and Order of the United States District Court for the District of Arizona dated December 10, 2012, this action was transferred to this Court pursuant to 28 U.S.C. § 1406(a).

21.    This Court has diversity jurisdiction over the present action pursuant to 28 U.S.C. § 1332(a)(1).  Plaintiff Sand Dollar is a resident of the State of Arizona.  Upon information and belief, none of the defendants are residents of the State of Arizona.  As alleged above, upon information and belief, Defendants Steel, Rhodes, Lakey, Procopio,

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

and Kinkelaar are residents of the State of California.  Defendant Islet Sciences is a Delaware corporation that has transacted business and caused events to occur in California. Therefore, complete diversity exists among the parties.  The amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

22.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), as Defendants reside and/or do business in this District, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.    Defendants' Initial Solicitation of Investment From Sand Dollar**

23.    On April 20, 2010, Defendant Steel telephoned Sand Dollar member Dan Ford in Tucson, Arizona.

24.    Dan Ford and Defendant Steel had known each other from prior dealings with another company, Microislet, Inc. ("Microislet").

25.    During the April 20, 2010 telephone conversation with Dan Ford, Defendant Steel represented that he and Defendant Rhodes had purchased the intellectual property assets of Microislet through a bankruptcy proceeding.

26.    During the April 20, 2010 telephone conversation, Defendant Steel further represented that Microislet's intellectual property had been transferred to a new corporation, Defendant Islet Sciences.

27.    During the April 20, 2010 telephone conversation, Defendant Steel further represented that Islet Sciences had acquired the services of Defendant Jonathan Lakey, PhD., a leading authority in islet transplantation therapy for the control of Type I Diabetes.

28.    During the April 20, 2010 telephone conversation, Defendant Steel further represented that with the acquisition of Microislet's intellectual property, together with the services of Dr. Lakey, Islet Sciences would advance be years the process for securing U.S.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

Food and Drug Administration ("FDA") approval for an "Investigational New Drug" ("IND").

29.     During the April 20, 2010 telephone conversation, Defendant Steel further represented that Defendant Islet Sciences had developed proprietary methods for isolating and encapsulating cell therapy products for the treatment of Type I Diabetes.

30.     During the April 20, 2010 telephone conversation, Defendant Steel further represented that an IND application would be made with the FDA by Defendant Islet Sciences within a few months.

31.     During the April 20, 2010 telephone conversation, Defendant Steel further represented that Defendant Islet Sciences would be ready to begin human clinical trials of its IND by approximately October of 2010.

32.     During the April 20, 2010 telephone conversation, Defendant Steel represented that Defendant Islet Sciences would be able to make a public offering through the SEC within months of securing investors for Defendant Islet Sciences.

33.     During the April 20, 2010 telephone conversation, Defendant Steel asked Dan Ford if he would be interested in securing initial capital investors for Defendant Islet Sciences with a view of taking Defendant Islet Sciences "public" with the U.S. Securities and Exchange Commission ("SEC").

34.     Dan Ford asked Defendant Steel for additional information.

**B.     Defendants Make Express Representations Regarding Islet Sciences' Intellectual Property and Purpose of Investment Funding.**

35.     On or about April 27, 2010, Sand Dollar member Dan Ford met with Defendant Steel in California where Defendant Steel provided a confidential "Executive Summary Overview" of Defendant Islet Sciences and a confidential "Pancreas Replacement PowerPoint" presentation to Dan Ford.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

36. Upon information and belief, Defendants Steel, Rhodes and Lakey participated in the drafting and/or vetting and approval of the Executive Summary Overview and the confidential PowerPoint.

37. The confidential PowerPoint represented that Islet Sciences would submit its IND application with the FDA in the fourth quarter of 2010 followed by human Phase I/IIA clinical trials.

38. The confidential PowerPoint represented that $500,000 "bridge financing" was needed by Defendant Islet Sciences for product development and validation, professional fees, corporate marketing and scientific advisory board consulting" with a view to an "anticipated reverse merger" and "public trading" of its shares on the Over The Counter Bulletin Board.

39. The confidential PowerPoint further represented that Islet Sciences had acquired "key technologies" and had "acquired Microislet assets in Chapter 11/7 proceedings."

40. The confidential PowerPoint further represented that Islet Sciences would "leverage . . . Microislet's time and $70M of development expense" and "change [its] investor base from 3,000 to 9."

41. At or near the time that Sand Dollar was presented with the PowerPoint and Executive Summary, Defendant Steel provided to Sand Dollar member Dan Ford electronic transmissions from the National Institutes of Health ("NIH") which indicated that Defendants Steel and Lakey had been awarded a grant for diabetes research.

42. At the time that Defendant Steel made the April 20, 2010 telephone call to Sand Dollar member Dan Ford, and at the time Defendant Steel presented the executive summary, PowerPoint presentation and NIH communications to Sand Dollar member Dan Ford, Defendant Islet Sciences did not exist as a corporate entity – a fact Defendants did not disclose to Sand Dollar.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

43.     In April 2010, when Defendants first solicited Sand Dollar's investment and presented Sand Dollar with confidential information about Islet Sciences' intellectual property and plans for research and development, Sand Dollar was not aware that Islet Sciences did not exist as a corporate entity.

44.     On or about May 12, 2010, Defendants Rhodes and Steel executed a handwritten assignment (hereinafter the "Rhodes Assignment") marked "confidential," and stating that, "I, Dan Rhodes hereby assign my asset, acquired at the Microislet BK auction to Islet Sciences, Inc.  This assignment is in consideration of my founders shares in Islet Sciences."

45.     Sand Dollar had no contemporaneous knowledge of the Rhodes Assignment, and reasonably believed that Islet Sciences owned the Microislet intellectual property at the time Steel first contacted Dan Ford about the possibility of investment.

**C.     Defendants Propose Investment Terms and Begin Formation of Islet Sciences.**

46.     On or about May 3, 2010, Defendant Steel electronically transmitted a form of promissory note to Sand Dollar member Dan Ford to be executed by Defendant Islet Sciences whereby Defendant Islet Sciences, as borrower, would borrow a principal sum of Five Hundred Thousand Dollars ($500,000.00) from Sand Dollar.

47.     Thereafter, on or about May 4, 2010, Defendant Kinkelaar caused to be filed with the State of Delaware Secretary of State Division of Corporations a "Certificate of Incorporation of Islet Sciences, Inc." ("Certificate of Incorporation").

48.     None of the defendants informed Sand Dollar of the May 4, 2010 incorporation of Islet Sciences.

49.     Islet Sciences' Certificate of Incorporation identified Kinkelaar as the sole incorporator.  No Board of Directors was named on the Certificate of Incorporation.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

50.     Islet Sciences' Certificate of Incorporation authorized Islet Sciences to issue one class of shares designated as Common Stock in the total number of twenty million shares (20,000,000), each share having a par value of $ 0.0001.

51.     On or about May 4, 2010, Defendant Procopio caused to be filed with the Department of Treasury, Internal Revenue Service a Form SS-4 Application for Employer Identification Number on behalf of Defendant Islet Sciences.

52.     Upon information and belief, Procopio was designated as an agent of Islet Sciences with the Department of Treasury, Internal Revenue.

53.     On or about May 5 or 6, 2010, Defendant Steel again telephoned Sand Dollar member Dan Ford, and again solicited funds for Islet Sciences from Sand Dollar.

54.     Defendant Steel's solicitation of funds on May 5 or 6, 2010 repeated the representations previously made by Defendant Steel during the April 20, 2010 telephone call to Sand Dollar member Dan Ford.

55.     On May 7, 2010, Sand Dollar members Dan Ford and Earl Barnes met in California with Defendant Steel and Defendant Lakey.

56.     During the May 7, 2010 meeting, Defendant Steel and Defendant Lakey represented that Islet Sciences could begin human clinical trials of an IND by the third or fourth quarter of 2010.

57.     During the May 7, 2010 meeting, Defendant Steel again represented that Islet Sciences had developed proprietary methods for isolating and encapsulating cell therapy products for the treatment of Type I Diabetes and that Islet Sciences' acquisition of Microislet's intellectual property would advance FDA approval by years for Islet Sciences' IND.

58.     During the May 7, 2010 meeting, Defendant Lakey provided a tour of laboratory facilities at the University of California Irvine which Lakey stated were being used by Islet Sciences' for tests and trials.

59.    During the May 7, 2010 meeting, Defendant Steel and Sand Dollar member Dan Ford again discussed the terms of the promissory note to be executed by Islet Sciences to include an option for Sand Dollar to convert the promissory note into a holding of twenty-five percent (25%) of the fully-diluted common stock of Islet Sciences and ensuring Sand Dollar one seat on the Board of Directors of Islet Sciences.

60.    During the May 7, 2010 meeting, Defendant Steel again represented that it was the intent to take Islet Sciences "public" with a public offering registered with the SEC.

61.    During the May 7, 2010 meeting, Defendant Steel represented that Sand Dollar would be in a very favorable position to enhance any investments it made in Islet Sciences because of the unique circumstances available to Islet Sciences as described during the previous meetings and conversations between Sand Dollar members and Defendants Steel and Lakey.

62.    During the course of the May 7, 2010 meeting, Sand Dollar member Dan Ford informed Defendant Steel that Sand Dollar would not provide money to Islet Sciences unless any funds provided could be converted into a holding of twenty-five percent (25%) of the fully-diluted common stock of Defendant Islet Sciences, and that Sand Dollar would be entitled to one seat on the Board of Directors of Islet Sciences.

63.    Defendant Steel responded that providing conversion of funds to twenty-five percent (25%) of the fully-diluted common stock of Islet Sciences and one seat on the Board of Directors would be arranged.

64.    On or about May 13, 2010, Defendant Steel forwarded the series of electronic transmissions to Sand Dollar member Dan Ford regarding the awarding of a NIH grant in the approximate amount of $200,000.

65.    On or about May 16, 2010, Defendant Steel electronically transmitted to Sand Dollar member Dan Ford a proposed Islet Sciences' projected budget for June

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

9

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

through November of 2010 showing expenses for those months of approximately $335,000.00.

**D.    Sand Dollar Provides Investment Funds to Islet Sciences.**

66.    Based upon the terms negotiated by the parties and the various representations made by Defendant Steel, Sand Dollar agreed to advance funds to Islet Sciences.

67.    On or about May 17, 2010, Defendant Islet Sciences, Inc., as borrower, executed a Promissory Note ("Promissory Note") in the principal amount of Five Hundred Thousand Dollars ($500,000.00) in favor of Sand Dollar, as lender.

68.    Section 5 of the Promissory Note provided that upon the notice and election by Sand Dollar, as lender, and receipt of the notice and election by Islet Sciences, as borrower, the Promissory Note would be converted to a number of shares equal to twenty-five-percent (25%) of Islet Sciences' fully-diluted common stock.

69.    Section 6 of the Promissory Note provided Sand Dollar with one seat on the Board of Directors of Islet Sciences.

70.    Defendant Steel signed the Promissory Note as "Chairman and CEO" of Islet Sciences even though Islet Sciences had neither constituted a Board of Directors nor appointed officers as of the date of the Promissory Note.

71.    Sand Dollar was not aware that Islet Sciences had not constituted a Board of Directors or appointed officers as of the date of the Promissory Note.

72.    Upon information and belief, Defendant Steel executed the Promissory Note as an agent of Islet Sciences under the direction and control of Defendant Kinkelaar, the sole incorporator of Islet Sciences.

73.    It was agreed and understood by the parties that Sand Dollar's performance under the Promissory Note would come in a series of installment payments that would timely cover Islet Sciences' "bridge financing" needs and expenses as represented by

Defendant Steel, and that Sand Dollar's rights under the Promissory Note would commence as soon as Sand Dollar began such performance.

74.    On or about May 17, 2010, Sand Dollar commenced performance on the Promissory Note by wire transferring, through Earl Barnes, Twenty Thousand Dollars ($20,000.00) to Islet Sciences.

75.    On or about May 17, 2010, Islet Sciences deposited the wire transferred Twenty Thousand Dollars ($20,000.00) to California Bank and Trust checking account number 2140089201.

76.    On or about June 2, 2010, Sand Dollar caused to be hand delivered Sixty-Six Thousand Dollars ($66,000.00) to California Bank and Trust from Wells Fargo Bank in Tucson, Arizona for deposit in Defendant Islet Sciences' checking account number 2140089201.

77.    On or about June 29, 2010, Sand Dollar caused to be wire transferred One Hundred Thousand Dollars ($100,000.00) to California Bank and Trust from Wells Fargo Bank in Tucson, Arizona for deposit in Defendant Islet Sciences' checking account number 2140089201.

78.    On or about August 2, 2010, Sand Dollar caused to be wire transferred One Hundred Seventy One Thousand Dollars ($171,000.00) to California Bank and Trust from Wells Fargo Bank in Tucson, Arizona for deposit in Defendant Islet Sciences' checking account number 2140089201.

**E.    Defendants Enlist Sand Dollar's Assistance in Identifying and Purchasing a Shell Corporation Suitable for Reverse Merger.**

79.    Beginning on or about April 27, 2010, and continuing through for several months thereafter, Defendants Steel, Rhodes and Kinkelaar, through various statements and conduct, enlisted Sand Dollar's assistance in identifying and purchasing a shell

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

corporation that would be appropriate for a reverse merger and ultimately taking Islet Sciences "public."

80.     Defendants Steel and Rhodes, through various statements and conduct, represented that any efforts or funds expended by Sand Dollar in the search for and/or purchase of such a corporate shell would be credited as part of Sand Dollar's investment in Islet Sciences.

81.     On or about April 27, 2010, Sand Dollar member Dan Ford investigated and recommended to Defendant Steel that a Nevada corporation known as "One E Commerce Corp." would be an appropriate corporate vehicle to take Defendant Islet Sciences public.

82.     Defendant Steel rejected the suggestion of One E Commerce Corp as an appropriate vehicle for Defendant Islet Sciences to go public.

83.     On or about June 7, 2010, Sand Dollar purchased, with the knowledge and encouragement of Defendant Steel, Reykjavik Partners Inc. ("Reykjavik") for Fifty Thousand Dollars ($50,000.00) for the purpose of proceeding with a "reverse merger" to take Defendant Islet Sciences "public."

84.     On or about mid-June, 2010, Sand Dollar member Jack Neubeck provided Defendant Steel with the name of lawyer Richard S. Lane for the purposes of assisting Defendant Islet Sciences reverse merger with Reykjavik.

85.     Sand Dollar also wire transferred Ten Thousand Dollar ($10,000.00) to attorney Richard S. Lane, an attorney experienced in working with the SEC, for the purpose of bringing Reykjavik to the point where it could be used for the reverse merger in order to take Defendant Islet Sciences "public."

86.     Defendant Steel acknowledged that the funds expended by Sand Dollar described in the search for and purchase of a suitable corporate shell would be credited to Sand Dollar's Five Hundred Thousand Dollars ($500,000.00) funding with Islet Sciences.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

87.    On or about June 28, 2010, attorney Richard Lane electronically communicated to Defendant Steel a list of fourteen (14) items of information necessary to complete a reverse merger of Islet Sciences with Reykjavik.

88.    Defendants Steel and Islet Sciences never provided the requested information to attorney Richard Lane.

89.    Defendant Steel was to meet in New York City with attorney Lane, but then he rejected Reykjavik, saying it was going to "take too long", approximately 4 to 6 months, to effectuate the reporting and updating changes necessary to submit a reverse merger suitable to bring Islet Sciences "public."

90.    Additionally, Sand Dollar, at the behest of Defendants Steel and Islet Sciences, purchased a second "shell" corporation, Ventana Biotech, Inc. at a total cost of One Hundred Twenty Thousand Dollars ($120,000.00), for the purpose entering into a reverse merger to facilitate Islet Sciences going "public."

91.    On or about September, 2010, Sand Dollar member Jack Neubeck communicated with Defendant Steel regarding the use of Ventana Biotech, Inc. for the purpose entering into a reverse merger to facilitate Defendant Islet Sciences going "public."

92.    On or about September 4, 2010, after Sand Dollar had purchased Ventana Biotech, Inc., Defendant Steel rejected the use of Ventana Biotech, Inc. as a corporate vehicle for a merger and taking Defendant Islet Sciences public.

**F.    Sand Dollar's Request for Accounting of Its Investment Funds.**

93.    During July 2010, Sand Dollar requested from Defendant Steel an accounting of Islet Sciences' disbursements to date.

94.    The request for an accounting was consistent with the parties' mutual understanding that the funds provided by Sand Dollar would be used for certain fixed expenses and anticipated expenses which had been identified by Defendant Steel when he

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

13

solicited the investment from Sand Dollar. The request was also consistent with Sand Dollar's right under Section 6 of the Promissory Note to participate in the direction and governance of Islet Sciences.

95. In response to the request for an accounting of Islet Sciences' expenses to date, on July 28, 2010, Defendant Steel electronically transmitted to Sand Dollar member Dan Ford a simple list of expenses incurred and a purported checking account balance for Islet Sciences.

96. During July 2010, Sand Dollar informed Defendant Steel that no further funds would be invested in Islet Sciences until an appropriate accounting of expenses and disbursements had been provided to Sand Dollar and further demanded that Islet Sciences' corporate records be made available to Sand Dollar for review.

97. On or about mid-August 2010, Sand Dollar member Jack Neubeck again communicated with Defendants Steel and Kinkelaar requesting an accounting of monies received from Sand Dollar and Islet Sciences' corporate records and books.

98. On or about September 10, 2010, Sand Dollar electronically communicated with Defendant Steel, informing him that Sand Dollar was at a "crossroads" with Islet Sciences and wanted "to give you one last opportunity to take the right road before this goes down a path that none of us want to go down but will be necessary if full disclosure is not made immediately."

99. The September 10, 2010 email from Sand Dollar to Defendant Steel repeated the prior request for detailed documentation of Defendant Islet Sciences' disbursements and expenses of the amounts invested by Sand Dollar.

100. The September 10, 2010 email from Sand Dollar to Defendant Steel demanded the documentation by September 13, 2010.

101. On September 10, 2010, Defendant Steel responded to Sand Dollar that Rick Egan, Defendant Islet Sciences' Chief Financial Officer, was "preparing the materials

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

14

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

which will be part and parcel to any audit prior to merger," and the information would be forwarded when received by Defendant Steel to "all the investors."

### G.     Kinkelaar Amends the Certificate of Incorporation, Dilutes the Stock, and Exchanges Stock for Assignment of Lakey's Intellectual Property Rights.

102.    On or about August 26, 2010, Defendant Kinkelaar electronically communicated to Defendant Steel that he had received "those assignments."

103.    Defendant Kinkelaar's August 26, 2010 email to Defendant Steel also stated that "share issuance are pending.  I am working on those, as we discussed."

104.    Defendant Kinkelaar's August 26, 2010 email to Defendant Steel was made in Kinkelaar's dual capacity as Islet Sciences' sole incorporator and corporate counsel.

105.    On or about August 27, 2010, Defendant Kinkelaar, as the sole incorporator of Islet Sciences, caused to be filed with the State of Delaware Secretary of State Division of Corporations a "Certificate of Amendment of Certificate of Incorporation of Islet Sciences, Inc." ("Certificate of Amendment").

106.    At the time Kinkelaar filed the Certificate of Amendment, Islet Sciences did not have a Board of Directors.

107.    In the Certificate of Amendment, Kinkelaar falsely certified in Paragraph 2 that "[t]he Corporation has not received any payment for any of its stock."  Kinkelaar's certification did not disclose the May 12, 2010 Rhodes Assignment, which was "in consideration for [Rhodes] founders shares in Islet Sciences," or the consideration paid for the pending "share issuance" that was referenced in Kinkelaar's August 26, 2010 email to Steel.

108.    The Certificate of Amendment authorized Islet Sciences to issue one class of shares designated as Common Stock in the total number of forty million shares (40,000,000), each share having a par value of $ 0.0001.

109.    On or about August 30, 2010, Defendant Lakey executed an "Assignment of Intellectual Property, Know-How and Inventions" ("Lakey Assignment") in favor of Defendant Islet Sciences.

110.    The Lakey Assignment purported to transfer all of Lakey's intellectual property rights in and to "in vitro maturation of porcine islets in an alginate capsule" and in and to "novel islet maturation of media for islet maturation" in exchange for Two Million (2,000,000) shares of Islet Sciences' Common Stock.

**H.    Sand Dollar Exercises Right to Convert to Stock and Designate Board Member.**

111.    On or about September 15, 2010, having not received any response to the September 10, 2010 email demanding documentation of Islet Sciences' use of Sand Dollar's investment funds, Sand Dollar executed a "Notice of Exercise of Conversion Option."

112.    The Notice of Exercise of Conversion Option invoked Section 5 of the May 17, 2010 Promissory Note, which permitted Sand Dollar "at any time" to convert the Note to twenty-five percent (25%) of the fully diluted common shares of Islet Sciences.

113.    On September 16, 2010, Sand Dollar, through Attorney Charles Smith, corresponded with Defendant Kinkelaar and included the executed Exercise of Conversion Option.

114.    Per the terms of the Promissory Note, the conversion to stock "shall" take place upon the date of receipt of the Conversion Notice by the Islet Sciences.

115.    Upon information and belief, as of September 16, 2010, Defendant Kinkelaar was the sole incorporator and Islet Sciences had no Board of Directors.

116.    The September 16, 2010 correspondence to Defendant Kinkelaar further advised that Sand Dollar designated Sand Dollar member Dan Ford to the current Board of Directors for Defendant Islet Sciences.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

117.    The September 16, 2010 correspondence to Defendant Kinkelaar further requested a copy of Defendant Islet Sciences' corporate books and records including the common stock ledger, director roster, articles of incorporation, bylaws and minutes of meetings.

118.    On September 23, 2010, Sand Dollar member Dan Ford requested that Defendant Steel schedule a meeting of the Board of Directors of Defendant Islet Sciences which was ignored by Defedant Steel and Defendant Islet Sciences.

**I.    Defendants Thwart Sand Dollar's Rights to Convert to Stock, Obtain Board Representation and Obtain Documentation of Islet Sciences' Expenditures.**

119.    On September 24, 2010, Attoney Smith emailed Defendant Kinkelaar, setting a deadline of September 29, 2010 for production of the previously requested corporate books and records of Defendant Islet Sciences.

120.    On September 30, 2010, Defendant Kinkelaar telephoned Attorney Smith promising that Islet Sciences' corporate books and records would be provided next week and stating that the original twenty million shares of Defendant Islet Sciences' common stock was already fully subscribed and issued or promised to be issued and that Sand Dollar could not be guaranteed twenty five percent (25%) of Defendant Islet Sciences' common shares.

121.    On or about October 1, 2010, Defendant Steel electronically corresponded with Sand Dollar stating that Defendant Kinkelaar would forward to him (Defendant Kinkelaar) the Certificate of Amendment and Bylaws of Defendant Islet Sciences.

122.    Defendants Kinkelaar and Steel failed to provide the promised corporate books and records of Defendant Islet Sciences.

123.    On or about October 22, 2010, Sand Dollar made a demand upon Defendant Islet Sciences and Defendant Kinkelaar as sole incorporator of Islet Sciences to inspect the

17

corporate books and records of Islet Sciences pursuant to Section 220 of the Delaware General Corporation Law ("Section 220 Demand for Inspection").

124. The demand for inspection of Islet Sciences' corporate books and records was requested to take place on November 4, 2010.

125. On or about October 22, 2010, Attorney Smith electronically transmitted to Defendants Kinkelaar and Steel the Section 220 Demand for Inspection.

126. On or about October 26, 2010, Defendant Kinkelaar provided Attorney Smith with copies of Islet Sciences' Articles of Incorporation, Certificate of Amendment and Bylaws.

127. On or about October 26, 2010, Defendant Kinkelaar electronically corresponded with Attorney Smith acknowledging receipt of the Section 220 Demand for Inspection, and stating that there was a need to verify that Sand Dollar was an "accredited investor" prior to the issuance of any shares to Sand Dollar.

128. On or about October 29, 2010, Defendant Kinkelaar corresponded with Attorney Smith and denied that Sand Dollar was entitled to twenty five percent (25%) of the Islet Sciences' fully diluted common stock.

129. In the October 29, 2010 correspondence, Defendant Kinkelaar claimed that Sand Dollar was only entitled to Seventeen and Eighty Five Hundredth percent (18.75%) of Defendant Islet Sciences' common stock.

130. In the October 29, 2010 correspondence, Defendant Kinkelaar refused to issue any of Defendant Islet Sciences' common stock until Sand Dollar executed an "Investor Representation."

131. The Investor Representation contained warranties and representations to be made by Sand Dollar which were false and inaccurate.

132. In the October 29, 2010 correspondence, Defendant Kinkelaar denied that Sand Dollar was entitled to one seat on the Board of Directors.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

133.    In the October 29, 2010 correspondence, Defendant Kinkelaar stated that Sand Dollar was not officially a shareholder of Islet Sciences.

134.    In the October 29, 2010 correspondence, Defendant Kinkelaar refused to make the corporate books and records of Islet Sciences available to Sand Dollar for inspection.

135.    On November 4, 2010, Defendant Kinkelaar electronically communicated to Attorney Smith that Defendants Kinkelaar and Procopio were corporate counsel for Defendant Islet Sciences.

136.    On November 4, 2010, Sand Dollar members and managers Jack Neubeck and John Hall went to 12702 High Bluff Drive Suite 200, San Diego, the listed corporate office of Defendant Islet Sciences, to inspect the corporate books and records listed in Section 220 Demand for Inspection.

137.    No representative of Defendant Islet Sciences was present at the High Bluff Drive address, and there was no indication that there was an office leased by Islet Sciences at that location.

138.    On November 4, 2010, Sand Dollar members and managers Jack Neubeck and John Hall met with Defendant Kinkelaar.

139.    At the November 4, 2010 meeting, Defendants Kinkelaar, Procopio, Steel and Islet Sciences failed to produce Islet Sciences' corporate books and records requested pursuant to the Section 220 Demand for Inspection.

140.    On or about November 8, 2010, Defendant Kinkelaar electronically communicated with Sand Dollar, acknowledging the November 4, 2010 meeting and providing Defendant Islet Sciences' California Bank & Trust checking account statements for account number 2140089201 from May through September, 2010.

141.    The November 8, 2010 email from Defendant Kinkelaar to Sand Dollar also included an unaudited profit and loss report and profit and loss detail for Islet Sciences for the period of January 1, 2010 to October 27, 2010.

142.    On or about November 11, 2010, Sand Dollar electronically communicated with Defendant Kinkelaar advising Kinkelaar that documents provided with the November 8, 2010 email from Kinkelaar to Sand Dollar did not reconcile, and that additional information would be requested from Sand Dollar's certified public accountant.

143.    The November 11, 2010 email from Sand Dollar to Defendant Kinkelaar stated that $50,000.00 was unaccounted for and not properly reconciled.

144.    The November 11, 2010 email from Sand Dollar to Defendant Kinkelaar also expressed concern that Islet Sciences had made payments to Defendant Rhodes which did not correspond to the amount which Rhodes told Sand Dollar members Dan Ford and John Hall he had received from Islet Sciences at the direction of Defendant Steel.

145.    On or about November 12, 2010, Sand Dollar provided Defendant Kinkelaar with a list of additional Islet Sciences' corporate financial records which Sand Dollar's accountant requested.

146.    On or about November 12, 2010, Defendant Kinkelaar provided some of the additional Islet Sciences' corporate financial records which Sand Dollar's accountant requested.

147.    On or about November 12, 2010, Defendant Steel acknowledged that $50,000.00 was unaccounted for and unreconciled and was a personal loan to him.

**J.    Sand Dollar Attempts to Resolve Its Differences With Defendants.**

148.    On or about November 16, 2010, Defendant Kinkelaar electronically corresponded with Sand Dollar stating that it was concluded that if Sand Dollar was willing to invest an additional $143,000.00, Sand Dollar would get the additional shares and board seat.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

149.    The demand for an additional investment of $143,000.00 did not acknowledge or credit Sand Dollar for more than $180,000.00 that had already been expended by Sand Dollar in searching for and purchasing shell corporations at the behest of Defendants.

150.    In the November 16, 2010 electronic correspondence, Defendant Kinkelaar gave Sand Dollar until November 22, 2010 to provide the additional $143,000.00 to Defendant Islet Sciences.

151.    On or about November 18, 2010, Defendant Kinkelaar suggested to Sand Dollar members John Hall and Jack Neubeck that they send $143,000.00 to Defendant Procopio's trust account on behalf of Islet Sciences.

152.    On or about November 18, 2010, Attorney Smith electronically responded to Defendant Kinkelaar that Sand Dollar would not be providing the additional $143,000.00 pursuant to Defendant's new Stock Purchase Agreement, which was inconsistent with the parties' prior agreement and understandings and the terms of the Promissory Note.

153.    Notwithstanding the inconsistencies with the parties' prior agreement, Attorney Smith stated in the November 18, 2010 email to Defendant Kinkelaar that Sand Dollar would be willing to provide an additional $143,000.00 resolve the parties' differences, but only under certain conditions.

154.    The conditions contained in the November 18, 2010 email from Attorney Smith to Defendant Kinkelaar included, among other things, the resolution of the dilution by the Certificate of Amendment of Sand Dollar's twenty five percent (25%) common stock position with Defendant Islet Sciences, and a resolution of a "public offering" for Islet Sciences.

155.    On November 19, 2010 Defendant Kinkelaar responded to Attorney Smith's November 18, 2010 email, and demanded that Sand Dollar provide Procopio with an executed Stock Purchase Agreement and payment of $143,000.00 by November 22, 2010,

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

or the offer to preserve and Dollar's twenty five percent (25%) common stock position with Islet Sciences and preserving Sand Dollar's seat on the Board of Directors of Islet Sciences would expire.

156.   On December 2, 2010, Defendant Kinkelaar and Attorney Smith communicated telephonically and agreed that Kinkelaar would provide an outline for settling differences between Sand Dollar and Defendants Steel and Islet Sciences.

157.   On December 7, 2010, Defendant Kinkelaar electronically communicated with Attorney Smith, setting forth a proposal for resolving differences between Sand Dollar and Defendants Steel and Islet Sciences.

158.   Defendant Kinkelaar's proposal to resolve differences between the parties was deemed unacceptable by Sand Dollar.

159.   Thereafter, communications between and among Defendants Kinkelaar, Procopio, Steel and Islet Sciences and Sand Dollar and Attorney Smith lapsed for approximately three-to-four months.

**K.   Kinkelaar Fails to Respond to Sand Dollar's Request for Status Updates**

160.   On or about April 19, 2011, Attorney Smith, by email, inquired with Defendant Kinkelaar as to the status of Islet Sciences' scientific advancements and the status of Islet Sciences going "public."

161.   Attorney Smith received no response to his email of April 19, 2011 to Defendant Kinkelaar.

162.   On April 25 and May 8, 2011, Attorney Smith again communicated by email to Defendant Kinkelaar, inquiring about the status of Defendant Islet Sciences without response from Defendant Kinkelaar.

163.   In the May 8, 2011 email to Defendant Kinkelaar, Attorney Smith wrote:

"There remain concerns about how my client's money was used, including payments to John Steel and Dan Rhodes.  We have never resolved the issues of the false statements made in the amendment to the Articles of Incorporation, the improper

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

usage of company funds, the issuance of stock to parties without adequate consideration, failure to issue stock to my client, failure to provide notice to my client's designated member of the board, and many more. It also appears that Dr. Lakey may be working with another company and this raises many concerns.

You have knowledge that my client was granted the right and did so appoint a director last summer, and that my client paid substantial consideration for stock in Islet Sciences Inc. Despite this knowledge about my client, as well as the knowledge that other persons had paid consideration for stock, you signed a statement to the contrary in order to amend the Articles of Incorporation and dilute my client's stock, all without any notice to my client. My client has never received a single notice of any director's or shareholder's meeting. We can only assume that no director or shareholder meeting has ever occurred. We have relied upon your legal and professional responsibilities as counsel for the company that you would not have knowledge of any such meeting without notifying me or my client. We have also relied upon you that no action adverse to my client has occurred without any communication."

164.    In the May 8, 2011 email to Defendant Kinkelaar, Attorney Smith copied the managing partners of Defendant Procopio.

165.    On May 9, 2011, after ignoring Sand Dollar's inquiries for three weeks, Defendant Kinkelaar finally attempted to contact Attorney Smith by telephone call.

166.    On May 10, 2011, Defendant Kinkelaar and Attorney Smith communicated by a telephone call in which Defendant Kinkelaar indicated he would follow up with Attorney Smith via email.

167.    On May 12, 2011, Defendant Kinkelaar emailed Attorney Smith, stating that he needed to talk to his client about the issues raised in Attorney Smith's May 8, 2011 email.

168.    Thereafter, Attorney Smith never received another communication from Defendant Kinkelaar.

///

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

**L.     Procopio Provides a "Stock Ledger," but Continues to Ignore Sand Dollar's Other Legitimate Requests for Information and Accounting.**

169.    On May 19, 2011, Defendant Procopio partner Robert Russell electronically communicated to Attorney Smith that Defendant Kinkelaar was out on extended medical leave and that Procopio partner John O'Neill would be in contact with Attorney Smith.

170.    On May 23, 2011, Attorney O'Neill attempted to contact Attorney Smith via email.

171.    On May 24, 2011, Attorney Smith responded to O'Neill's email by repeating the issues raised in the May 8, 2011 email to Defendant Kinkelaar.

172.    On June 6, 2011, O'Neill emailed Attorney Smith, attaching a "current stock ledger" for Defendant Islet Sciences dated June 1, 2011.

173.    The June 1, 2011 Islet Sciences' stock ledger reflected original issues on September 17, 2010 of certificate 1 for 3,000,000 shares to Defendant Steel; certificate 2 for 2,000,000 shares to Defendant Lackey; certificate 3 for 3,000,000 shares to Defendant Rhodes; certificate 4 for 3,000,000 shares to Charles DuPont; certificate 5 for 1,810,000 shares to Defendant Steel; certificate 6 for 1,810,000 shares to Charles DuPont; and certificate 7 for 1,810,000 shares to Defendant Rhodes.

174.    The June 1, 2011 Islet Sciences' stock ledger also reflected an original issue on October 29, 2010 of certificate 8 for 3,570,000 shares to Sand Dollar.

175.    Attorney O'Neill ignored further inquiries from Attorney Smith regarding the percentage of shares issued to Sand Dollar and other matters pertaining to Islet Sciences and Defendant Lackey.

176.    At all relevant times between May 4, 2010 and through until a Board of Directors was constituted – a date that was never disclosed to Sand Dollar – Defendant Kinkelaar acted as a principal and executive of Defendant Islet Sciences, and was solely

responsible for the management and direction of Islet Sciences as the sole incorporator of the company.

177.   At all relevant times between May 4, 2010 and through at least June, 2011 Defendants Kinkelaar and Procopio also acted as legal counsel for Defendant Islet Sciences.

M.   **Defendants' Representations Regarding Islet Sciences and its Intellectual Property Were False and/or Misleading.**

178.   Defendant Kinkelaar represented to Sand Dollar and its members John Hall and Jack Neubeck that, in his capacity as legal counsel for Defendant Islet Sciences, he had examined Defendant Islet Sciences' proprietary contracts and that those contracts were in order.

179.   During his November 4, 2010 meeting with Neubeck and Hall, Defendant Kinkelaar confirmed his knowledge of the handwritten Rhodes Assignment and indicated that he was "cleaning up" the assignment.

180.   In soliciting Sand Dollar's investment and providing information about Islet Sciences' intellectual property holdings in April and May of 2010 and thereafter, Defendants Steel and Rhodes failed to disclose that the Microislet intellectual property purportedly obtained by Islet Sciences in bankruptcy proceedings was, in fact, not owned by Islet Sciences, or by Defendants Steel or Rhodes.

181.   In fact, in April 2009, Microislet agreed to sell, and did sell, all of its intellectual property to a different company:  a Nevada corporation named Isletech, Inc. ("Isletech").

/ / /

/ / /

/ / /

/ / /

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

182. The sale of Microislet's intellectual property to Isletech was approved by the Bankruptcy Court, and included all of Microislet's "right, title and interest" in:

    a. "All intellectual property of [Microislet], including any and all rights under any and all patents, whether licensed, owned or pending application, to the extent assignable";

    b. All intellectual property of [Microislet], including all data, analyses, records, studies, and trade secrets, whether in hard or electronic format;" and

    c. All rights under the contract between [Microislet] and FIOS Theraputics, Inc."

183. Defendants Steel and Rhodes were aware, at all relevant times, of the April 2009 sale of all of Microislet's intellectual property to Isletech.

184. On information and belief, Defendants Lakey, Kinkelaar and Procopio were aware, at all relevant times, of the April 2009 sale of all of Microislet's intellectual property to Isletech.

185. On information and belief, from June through September 2009, Steel worked as a consultant to Islet Holdings and Isletech and was included in numerous confidential communications between those companies and Defendant Lakey.

186. On information and belief, in the spring of 2011, Steel unsuccessfully attempted to affect a transaction with Islet Holdings and Isletech wherein Steel would gain control or access to the intellectual property acquired from Microislet in bankruptcy.

187. At the time it was first approached by Steel in April 2010, and through until the original Complaint in this matter was filed in April 2012, Sand Dollar reasonably believed the veracity of Defendants' representation that Defendant Islet Sciences owned the intellectual property of Microislet.

188.    Defendants Steel, Rhodes, Lakey, Kinkelaar and Procopio never disclosed to Sand Dollar that the alleged purchase of Microislet's intellectual property by Rhodes and Steel, and subsequent transfer of such intellectual property to Islet Sciences, could be called into question or nullified by the April 2009 sale of Mircoislet's intellectual property to Isletech.

**N.    Islet Sciences Goes "Public" Following Reverse Merger With Shell Corporation Originally Suggested By Sand Dollar.**

189.    On or about September 15, 2011, Mr. John Welch as a director and principal shareholder of One eCommerce Corporation ("One E-Commerce"), a Nevada corporation, and Defendant Islet Sciences entered into a Stock Purchase Agreement pursuant to which Mr. Welch sold to Islet Sciences a controlling interest in One E-Commerce.

190.    The transaction referred to in the preceding paragraph began the process of a reverse merger transaction of Defendant Islet Sciences with One E-Commerce.

191.    In conjunction with the acquisition of the control of One E-Commerce by Defendant Steel and Defendant Islet Sciences, Steel and Islet Sciences caused to be filed with the SEC various forms, schedules and disclosures between September 22, 2011 and April 5, 2012 on behalf of both Islet Sciences and One E-Commerce.

192.    Upon information and belief, in conjunction with the reverse merger transaction of Defendant Islet Sciences with One E-Commerce, material misstatements of fact, omissions of fact and/or material misrepresentations were made in one or more of the various forms, schedules and disclosures between September 22, 2011 and April 5, 2012 filed with the SEC.

193.    To date, Sand Dollar has never been provided with the seat on Islet Sciences' Board of Directors that was guaranteed under the Promissory Note.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

194.    To date, none of the defendants have informed Sand Dollar whether a Board of Directors was ever formally constituted for Islet Sciences, and the date upon which the Board of Directors was constituted.

195.    To date, Sand Dollar has never received an accounting or return of its investment funds. Indeed, it appears that Plaintiff's investment funds have been entirely misappropriated by Defendants.

196.    Together, all Defendants actively solicited and/or facilitated, aided, and abetted in the solicitation of Sand Dollar to participate in the Defendant Islet Sciences' investment, based upon the material representations made in foregoing paragraphs.

### FIRST CLAIM FOR RELIEF
### Breach of Contract
### (Against Defendant Islet Sciences)

197.    Sand Dollar realleges each and every allegation of the Complaint as if set forth herein in full.

198.    Defendant Islet Sciences entered into a valid and enforceable contract with Sand Dollar by executing a Promissory Note, dated May 17, 2010.

199.    Sand Dollar performed its obligations under the Note.  Sand Dollar, whose primary obligation under the note was to provide Islet Sciences with $500,000.00 in value, performed by providing direct funding of $357,000.00 to Islet Sciences and expending more than $180,000.00 in identifying and purchasing shell corporations for the benefit of Islet Sciences.

200.    Defendant Islet Sciences breached its contract with Sand Dollar by refusing to honor Sand Dollar's designation of a member of Islet Sciences' Board of Directors pursuant to Section 6 of the Promissory Note.

201.    Defendant Islet Sciences breached its contract with Sand Dollar by refusing to provide Sand Dollar with 25 percent of the fully diluted Common shares held by Islet

3:12-cv-02969-MMA(RBB)

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

Sciences pursuant to Section 5 of the Promissory Note, and thereafter by failing to honor Sand Dollar's rights as a shareholder.

202.    As a result of the breaches by Defendant Islet Sciences, Sand Dollar has been damaged in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
### Common Law Fraud
### (Against All Defendants)

203.    Sand Dollar realleges each and every allegation of the Complaint as if set forth herein in full.

204.    In connection with Defendants' inducement of Plaintiff to enter into the investment in Defendant Islet Sciences, Defendants misrepresented or omitted, caused or knowingly allowed to be misrepresented or omitted, or participated in misrepresenting or omitting material facts included those set forth herein above.

205.    Each of Defendants' representations and/or omissions was of and concerning material facts which were false or which were not revealed.

206.    In addition, Defendants intentionally prevented Plaintiff from discovering the falsity of their representations.

207.    Defendants' misrepresentations and omissions of material fact included, but were not limited to:

> a.  The representation of Defendant Steel in April 2010 that Islet Sciences was an existing corporation with valuable intellectual property assets when, in fact, Islet Sciences did not come into existence, and could not have possessed any assets, until Defendant Kinkelaar filed the Articles of Incorporation on May 4, 2010.

> b.  The representations of Defendants Steel and Rhodes that they purchased the intellectual property of Microislet from bankruptcy and assigned it to

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

Islet Sciences, and that Islet Sciences would "leverage . . . Microislet's time and $70M of development expense" and "change [its] investor base from 3,000 to 9." Defendants Steel and Rhodes were aware that Microislet's intellectual property was purchased in bankruptcy by Isletech.

c. The failure of all Defendants, despite actual knowledge thereof, to disclose to Sand Dollar that Microislet's intellectual property was purchased by Isletech, and that Islet Sciences' right or title to such intellectual property was clouded, at best, by the previous acquisition of such intellectual property by Isletech.

d. The representations of Defendants Islet Sciences, Steel and Rhodes, through various statements and conduct, that any efforts or funds expended by Sand Dollar in the search for and/or purchase of such a corporate shell would be credited as part of Sand Dollar's investment in Islet Sciences.

e. The May 7, 2010 representations of Defendant Lakey that the laboratory facilities at the University of California Irvine were being used by Islet Sciences' for tests and trials. At the time of the representations, Islet Sciences had been in existence for only three days, and Lakey had not yet assigned any intellectual property interests to Islet Sciences.

f. The representations of Defendants Steel, Rhodes and Lakey, through the Executive Summary Overview, confidential PowerPoint, and various other statements, that the $500,000.00 investment being solicited from Sand Dollar would be used for specified needs including product development and validation, professional fees, corporate marketing and scientific advisory board consulting. As alleged in detail above, much of

30

the funding provided by Sand Dollar is unaccounted for and/or was not used for these stated purposes, including an improper $50,000.00 personal "loan" to Defendant Steel.

g.  The certification of Defendant Kinkelaar in the Certificate of Amendment that "[t]he Corporation has not received any payment for any of its stock," which was false in light of the May 12, 2010 Rhodes Assignment and the "stock issuance" that was pending before Kinkelaar filed the Certificate of Amendment.

208.  Defendants knew their representations were false when made or concealed or, at a minimum, did not perform the due diligence necessary to discover the truth.

209.  Defendants intended that Plaintiff rely upon their representations and material omissions by, among other things, encouraging and soliciting Sand Dollar to invest in Defendant Islet Sciences and by assuring Plaintiff that it would receive twenty-five-percent (25%) of Islet Sciences' fully-diluted common stock and one seat on the Board of Directors of Islet Sciences.

210.  Upon information and belief, from date of incorporation of Islet Sciences, through until the Board of Directors was constituted for Islet Sciences, the misrepresentations and omissions of Defendants Steel, Rhodes and Lakey were made as agents of Islet Sciences under the management, direction and control of Defendant Kinkelaar, the sole incorporator of Islet Sciences.

211.  Sand Dollar was ignorant of the falsity of Defendants' representations and omissions of fact as well as the true facts Defendants did not reveal.

212.  Sand Dollar reasonably relied upon, and had a right to rely upon, Defendants' representations and omissions of fact.

213.  As a direct and proximate result of Defendants' fraud, Sand Dollar has been damaged in a specific amount to be proven at trial.

3:12-cv-02969-MMA(RBB)

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

214.    Defendants' conduct was malicious and done with a willful and wanton disregard of Sand Dollar's interests, justifying an award of punitive damages sufficient to punish Defendants and deter future similar conduct by Defendants and others.

## THIRD CLAIM FOR RELIEF
### Negligent Misrepresentation/Omission
### (Against All Defendants)

215.    Sand Dollar realleges each and every allegation of the Complaint as if set forth herein in full.

216.    In connection with Defendants' inducement of Plaintiff to enter into the investment in Defendant Islet Sciences, Defendants misrepresented and/or omitted numerous material facts, including those set forth in detail herein above.

217.    Each of Defendants' misrepresentations was made without reasonable ground for believing it to be true.

218.    Each of Defendants' material omissions was made without reasonable ground for believing that Sand Dollar had knowledge of the facts which were not revealed.

219.    Defendants' misrepresentations and omissions were made with the intent to induce Sand Dollar's reliance upon an inaccurate set of facts.

220.    Upon information and belief, from date of incorporation of Islet Sciences, through until the Board of Directors was constituted for Islet Sciences, the misrepresentations and omissions of Defendants Steel, Rhodes and Lakey were made as agents of Islet Sciences under the management, direction and control of Defendant Kinkelaar, the sole incorporator of Islet Sciences.

221.    Sand Dollar reasonably relied upon, and had a right to rely upon, Defendants' representations and omissions of fact.

222.    As a direct and proximate result of Defendants' misrepresentations and omissions, Sand Dollar has been damaged in a specific amount to be proven at trial.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

# FOURTH CLAIM FOR RELIEF
## Breach of Fiduciary Duty
### (Against Defendants Kinkelaar and Procopio)

223.   Sand Dollar realleges each and every allegation of the Complaint as if set forth herein in full.

224.   Defendant Kinkelaar was the sole incorporator of Defendant Islet Sciences and did not appoint a Board of Directors from the May 4, 2010 date of incorporation through at least September 17, 2010, and, upon information and belief, for months thereafter.

225.   As the sole executive authority, under applicable Delaware law, for Defendant Islet Sciences, Defendant Kinkelaar owed fiduciary duties to Sand Dollar.

226.   Sand Dollar placed trust and confidence in Defendant Kinkelaar as the sole executive authority for Defendant Islet Sciences to protect Sand Dollar's investment in Islet Sciences, to properly manage Islet Sciences and abide by Islet Sciences' commitments in good faith, and to protect Sand Dollar's rights and interests in the direction and governance of Islet Sciences, including Sand Dollar's entitlement to one seat on Islet Sciences' Board of Directors.   Because Defendant Kinkelaar was the sole executive authority for Islet Sciences, Sand Dollar was vulnerable to, and dependent upon Defendant Kinkelaar to protect its rights and interests as an investor and putative member of the Board of Directors.

227.   During the period of May 17, 2010 through at least September 17, 2010, Defendant Kinkelaar breached his fiduciary duties to Sand Dollar through the conduct as described in detail above, including but not limited to Kinkelaar's refusal to honor Sand Dollar's designation of a board member, his failure to protect Sand Dollar's right to 25 percent of Islet Sciences' commonly held stock, his failure to provide information about Islet Sciences' affairs that was material to Sand Dollar's rights and interests in the

company, his failure to disclose to Sand Dollar facts which called into question Islet Sciences' ownership rights in certain intellectual property, and his false statements in Islet Sciences' Certificate of Amendment.

228.    During the period of May 17, 2010 through at least September 17, 2010, Defendant Kinkelaar was acting in his capacity as a member and partner in Defendant Procopio.

229.    Defendant Kinkelaar's actions, representations and omissions, on which Plaintiff reasonably relied during the period of May 17, 2010 through at least September 17, 2010, caused Plaintiff to incur injuries and damages in a specific amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**Aiding and Abetting Breach of Fiduciary Duty**
**(Against Defendants Steel, Rhodes and Lakey)**

230.    Sand Dollar realleges each and every allegation of the Complaint as if set forth herein in full.

231.    Each Defendant knew that Defendants Kinkelaar and Procopio owed fiduciary duties and obligations to Sand Dollar and provided substantial assistance to them in breaching their respective fiduciary duties and obligations by, among other things, aiding, abetting, facilitating, participating in and/or assisting in the wrongful conduct described herein above.

232.    Defendants Kinkelaar and Procopio and the other Defendants acted together to exploit the fiduciary relationship between Sand Dollar and Defendant Kinkelaar.

233.    In encouraging Defendant Kinkelaar to use his influence with Plaintiff and breach his fiduciary duties and obligations to Plaintiff as described herein above, and in joining him in such breaches, Defendants acted to further their own financial interests and/or purposes to the detriment of Plaintiff.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

234.    Upon information and belief, from date of incorporation of Islet Sciences, through until the Board of Directors was constituted for Islet Sciences, Defendants Steel, Rhodes and Lakey acted as agents of Islet Sciences under the management, direction and control of Defendant Kinkelaar, the sole incorporator of Islet Sciences.

235.    As a direct and proximate result of Defendants' substantial assistance to Defendant Kinkelaar in breaching his fiduciary duties and obligations to Plaintiff, Plaintiff has suffered injuries and damages in a specific amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF
### Aiding and Abetting Fraud
### (Against Defendants Kinkelaar and Procopio)

236.    Sand Dollar realleges each and every allegation of the Complaint as if set forth herein in full.

237.    As alleged in detail in Sand Dollar's Second Claim for Relief, Defendants fraudulently induced Sand Dollar to invest in Islet Sciences.

238.    Upon information and belief, Defendants Kinkelaar and Procopio were aware of the various fraudulent misrepresentations and omissions made by the other Defendants in attempting to procure Sand Dollar's investment in Islet Sciences, and were aware that such misrepresentations and omissions constituted a breach of duty to Sand Dollar.

239.    Defendants Kinkelaar and Procopio gave substantial assistance to the other Defendants in perpetrating the fraud against Sand Dollar, as alleged in detail above.

240.    Upon information and belief, from date of incorporation of Islet Sciences, through until the Board of Directors was constituted for Islet Sciences, Defendants Steel, Rhodes and Lakey acted as agents of Islet Sciences under the management, direction and control of Defendant Kinkelaar, the sole incorporator of Islet Sciences.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

241.    As a direct and proximate result of the substantial assistance provided by Defendants Kinkelaar and Procopio to the other Defendants in perpetrating a fraud, Plaintiff has suffered injuries and damages in a specific amount to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**
**Securities Fraud – California Corp. Code §§ 25401, 25501, 25504 and 25504.1**
**(Against All Defendants)**

242.    Sand Dollar realleges each and every allegation of the Complaint as if set forth herein in full.

243.    In connection with their offer to sell and subsequent sale of securities in Islet Sciences to Sand Dollar and its members, Defendants misrepresented and/or omitted numerous material facts by means of written and oral communications, including those set forth in detail herein above.

244.    Each of Defendants' misrepresentations was made without reasonable ground for believing it to be true.

245.    Each of Defendants' material omissions was made without reasonable ground for believing that Sand Dollar had knowledge of the facts which were not revealed.

246.    Defendants' misrepresentations and omissions were made with the intent to induce Sand Dollar's reliance upon an inaccurate set of facts.

247.    Sand Dollar reasonably relied upon, and had a right to rely upon, Defendants' representations and omissions of fact.

248.    Defendant Kinkelaar, in his capacity as the sole incorporator for Islet Sciences before a Board of Directors was named, was a control person for Islet Sciences and is jointly and severally liable for the false statements and omissions of the other Defendants, as alleged in detail above, pursuant to California Corp. Code § 25504.

249.    Upon information and belief, from date of incorporation of Islet Sciences, through until the Board of Directors was constituted for Islet Sciences, Defendants Steel,

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

Rhodes and Lakey acted as agents of Islet Sciences under the management, direction and control of Defendant Kinkelaar, the sole incorporator of Islet Sciences.

250.    As alleged in detail herein above, all Defendants made misrepresentations and/or omissions, or substantially assisted in the misrepresentations and/or omissions with the intent to deceive Sand Dollar in the offer and sale of securities in Islet Sciences, and are thus jointly and severally liable pursuant to California Corp. Code § 25504.1.

**EIGHTH CLAIM FOR RELIEF**
**Unfair Business Practices – California Business & Professions Code § 17200 et seq.**
**(Against All Defendants)**

251.    Sand Dollar realleges each and every allegation of the Complaint as if set forth herein in full.

252.    In connection with their offer to sell and subsequent sale of securities in Islet Sciences to Sand Dollar and its members, Defendants engaged in numerous unfair, deceptive, untrue and misleading business practices, including the misrepresentations and omissions alleged above

253.    Members of the public were likely to be deceived by Defendants' unfair, deceptive, untrue and misleading practices.  Plaintiff Sand Dollar and its members were, in fact, deceived by such practices as alleged fully above.

254.    Defendants' misrepresentations and omissions were made with the intent to induce Sand Dollar's reliance upon an inaccurate set of facts.

255.    Sand Dollar reasonably relied upon, and had a right to rely upon, Defendants' representations and omissions of fact.

256.    As alleged in detail herein above, all Defendants made misrepresentations and/or omissions, or substantially assisted in the misrepresentations and/or omissions with the intent to deceive Sand Dollar in the offer and sale of securities in Islet Sciences.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

257.    Upon information and belief, from date of incorporation of Islet Sciences, through until the Board of Directors was constituted for Islet Sciences, Defendants Steel, Rhodes and Lakey acted as agents of Islet Sciences under the management, direction and control of Defendant Kinkelaar, the sole incorporator of Islet Sciences.

258.    As a direct and proximate result of Defendants' unfair, deceptive, untrue and misleading practices, Plaintiff has suffered monetary damages in a specific amount to be proven at trial.

### NINTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Against Defendants Islet Sciences and Steel)

259.    Plaintiff realleges each and every allegation of the Complaint as if set forth herein in full.

260.    Sand Dollar conferred a benefit upon Islet Sciences in the form of a substantial monetary investment under the expectation that Defendants would use the funds as herein above described.

261.    Islet Sciences assumed the benefit of Plaintiff's monetary investment in exchange for an obligation to: (1) provide Sand Dollar with twenty-five percent (25%) of Defendant Islet Sciences' fully diluted common stock; and (2) secure to Sand Dollar one seat on the Board of Directors of Defendant Islet Sciences.

262.    Islet Sciences failed to provide Plaintiff with twenty-five percent (25%) of Islet Sciences' fully-diluted common stock.

263.    Islet Sciences failed to secure to Plaintiff one seat on the Board of Directors of Defendant Islet Sciences.

264.    Instead, upon information and belief, Islet Sciences and Steel diverted or allowed the diversion of Sand Dollar's monetary investment and funds for other purposes

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

and for Defendant Steel's own pecuniary gain and personal interests, and without the knowledge or consent of Sand Dollar.

265.    Defendants Islet Sciences and Steel have been unjustly enriched and Sand Dollar has been impoverished as a result of Defendants' acts and conduct as described herein above.

266.    Sand Dollar lacks an adequate remedy at law to address its unjust impoverishment.

267.    Sand Dollar conferred benefits upon Defendants under circumstances that would render Defendants' retention of such benefits inequitable.

268.    Sand Dollar is entitled to damages in the amount of the value of the benefit unjustly realized and retained by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, based upon the foregoing facts and circumstances, Plaintiff requests judgment in its favor against Defendants, jointly and severally, as follows:

A.    For an award of Sand Dollar's actual, consequential and incidental damages incurred as a result of the breach of contract by Defendant Islet Sciences.

B.    For an Order, pursuant to California Corporations Code § 25501, rescinding Sand Dollar's investment in Defendant Islet Sciences and awarding interest at the legal rate.

C.    For an award of restitution and such other equitable relief as the Court deems just and proper against all Defendants for their violation of California Business and Professions Code § 17200 et seq.

D.    For an award of attorney's fees and costs pursuant to contractual fee provision set forth in the Promissory Note executed by Defendant Islet Sciences.

E.    For pre- and post-judgment interest at the statutory rate.

F.      For punitive damages against all Defendants in an amount the Court or trier of fact deems appropriate.

G.      For such other relief as the Court deems appropriate under the circumstances.

### JURY DEMAND

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

DATED this 11th day of January, 2012.


RUSING LOPEZ & LIZARDI, P.L.L.C.


s/ Todd M. Hardy
Todd M. Hardy
*Attorney for Plaintiff Sand Dollar Partners, LLC*
Email: thardy@rllaz.com

/ / /

/ / /

/ / /

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

40

## VERIFICATION

I, Jack Neubeck, hereby declare and state the following:

1. I am Managing Member of Plaintiff Sand Dollar Partners, LLC ("Sand Dollar").

2. In my capacity as Managing Member of Sand Dollar, I have read the foregoing Second Amended Complaint, know the contents thereof, and believe the same to be true to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on January _11_, 2013.

Jack Neubeck
Managing Member
Sand Dollar Partners, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of January 2013, a copy of the foregoing has been transmitted electronically to the CM-ECF filing system for filing and transmittal along with copies transmitted to the following parties via the CM-ECF system.

| | |
|---|---|
| William J. Maledon, Esq.<br>Geoffrey M. T. Sturr, Esq.<br>Osborn Maledon, PA<br>2929 North Central Avenue, 21st Flr.<br>Phoenix, AZ 85012-2793<br>wmaledon@omlaw.com<br>gsturr@omlaw.com<br>*Attorneys for Procopio, Cory Hargreaves an Savitch LLP, Michael J. Kinkelaar and John C. O'Neill* | Douglas M. Butz, Esq.<br>Butz Dunn & Desantis, PC<br>101 West Broadway, Ste. 1700<br>San Diego, CA  92101-8289<br>dbutz@butzdunn.com<br>*Attorneys for Procopio, Cory Hargreaves an Savitch LLP, Michael J. Kinkelaar* |
| Bruce R. Huerlin, Esq.<br>Catherine North Nounfodji, Esq.<br>Heurlin Sherlock Laird<br>1636 N. Swan Road, Ste. 200<br>Tucson, AZ  85712-4096<br>bheurlin@hslazlaw.com<br>chounfodji@hslazlaw.com<br>*Attorneys for Islet Sciences Incorporated and John Steel and Jonathan Lakey* | |

Courtesy copy served via electronic mail to:

Lawrence A. Steckman, Esq.
Eaton & Van Winkle, LLP
3 Park Avenue
New York, NY  10016
lsteckman@evw.com
*Attorneys for Defendants*
*Islet Sciences Incorporated*
*and John Steel and Jonathan Lakey*

s/__Todd M. Hardy_____