**RUSING LOPEZ & LIZARDI, P.L.L.C.**
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800
Facsimile: (520) 529-4262
Todd M. Hardy; thardy@rllaz.com
California State Bar No. 223581
Michael J. Rusing; mrusing@rllaz.com
Arizona State Bar No. 006617, *Counsel Pro Hac Vice*
Attorneys for Plaintiff Sand Dollar Partners, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sand Dollar Partners, L.L.C., an Arizona limited liability company, <br><br>       Plaintiff, <br><br> v. <br><br> Islet Sciences, Inc., a Delaware corporation; John Steel, an individual; Dan Rhodes, an individual; Jonathan Lakey an individual; Procopio, Cory, Hargreaves, and Savitch, L.L.P., a California limited liability partnership; Michael J. Kinkelaar an individual; Does 1-10, fictitious individuals; ABC Business Entities 1-10, fictitious business entities, <br><br>       Defendants. | No. 3:12-cv-02969 MMA (RBB) <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT ISLET SCIENCES, INC., JOHN STEEL AND JONATHAN LAKEY'S MOTION TO DISMISS** <br><br> **Hon. Michael M. Anello** <br> **Courtroom: 3A** <br><br> **DATE: April 15, 2013** <br> **TIME: 2:30 p.m.** |

# TABLE OF CONTENTS

**Page**

I.    FACTUAL BACKGROUND……………………..…………………………..1

II.   LEGAL STANDARD……………………………………………………4

III.  ARGUMENT……………………………………………………………4

A. Sand Dollar Has Properly Stated
A Claim For Breach Of Contract……………………...………………………4

    1.  Consideration For The Note
       Will Be Proven Through Parol Evidence……………………………………5

    2.  The Extraneous Email Is Not
       Incorporated By Reference In The Complaint………………….…………8

B. Sand Dollar Has Properly Stated A Claim For Fraud……..……..……………..12

C. Dollar Has Properly Stated
A Claim For Negligent Misrepresentation…………………………………15

D. Sand Dollar Has Properly Stated
A Claim for Aiding And Abetting……………………………………………...17

E. Sand Dollar Has Properly Stated
A Claim For Securities Fraud……………………………….…………………...19

F. Sand Dollar Has Properly Stated
A Claim Under The UCL…………………………………..………………21

G. Sand Dollar Has Properly Stated
A Claim For Unjust Enrichment…………………………………………………..23

IV.  CONCULSION…………………………………………….…………24

i

# **TABLE OF AUTHORITIES**

**RUSING LOPEZ & LIZARDI, P.L.L.C.**
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

## **CASES**

*Am. Contractors Indem. Co. v. United States,*
    570 F.3d 1373 (Fed.Cir.2009) ....................................................... 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................. 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................ 4

*Benson v. JPMorgan Chase Bank, N.A.,*
    2010 WL 1526394 (N.D.Cal. Apr. 15, 2010) .............................. 23

*Bowen v. Ziasun Tech, Inc.*, 116 Cal. App. 4th 777 (2004) ................ 22

*Bowman v. Union Trust Co. of San Diego,*
    41 Cal.App.2d 397 (1940) .............................................................. 6

*C.I.R. v. Bosch's Estate*, 387 U.S. 456 (1967) ................................... 23

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ....... 9, 11

*Chemstar, Inc. v. Liberty Mut. Ins.* Co., 41 F.3d 429 (9th Cir.1994) ............................... 23

*Cont'l Cas. Co. v. Enodis Corp.*, 417 Fed. App'x 668 (9th Cir.2011) ................ 24

*Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.,*
    911 F.2d 242 (9th Cir. 1990) .............................................. 8, 20

*Crestview Cemetery Assn. v. Dieden*, 54 Cal.2d 744 (1960). ............... 6

*Diamond Multimedia Systems, Inc. v. Superior Court,*
    19 Cal.4th 1036 (1999) .......................................................... 16, 17

*Erlich v. Menezes,* 21 Cal.4th 543 (1999)....................................... 15, 16

*Frye v. Wine Library, Inc.*, 2006 WL 3500605 (N.D.Cal. 2006) ........ 16

*Goehring v. Chapman University*, 121 Cal.App.4th 353 (2004). ..... 12, 13

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985)................................. 9

*Grange Co. v. Simmons,* 203 Cal.App.2d 567 (1962) ..................... 14, 19

*Grynberg v. Citation Oil & Gas Corp.,* 573 N.W.2d 493 (S.D.1997)................ 16

*Harris v. Atlantic Richfield Co.*, 14 Cal.App.4th 70 (1993) ................................................ 16

*In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006) ...................................... 17

*In re Tobacco II Cases*, 46 Cal.4th 298 (2009). .................................................................... 21

*In re: Charles Schwab Securities Litigation*,
    257 F.R.D. 534 (N.D. Cal. 2009)........................................................................................ 23

*Int'l Adiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ................................................................................................... 10

*J.P. Morgan Trust Co. v. Mid-America Pipeline Co.*,
    413 F. Supp. 2d 1244 (D.Kan. 2008)................................................................................. 10

*Kennecott Corp. v. Union Oil Co.*, 196 Cal.App.3d 1179 (1987) .................................... 6, 7

*Kneivel v. ESPN*, 393 F.3d 1068 (9th Cir.2005) ..................................................................... 4

*Krzyzanowsky v. Orkin Exterminating Co., Inc.*,
    2009 WL 481267 (N.D.Cal. 2009) .................................................................................... 16

*Linville v. Linville*, 132 Cal.App.2d 800 (1955) ...................................................................... 5

*Madu, Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria*,
    265 F.R.D. 106 (S.D.N.Y. 2010). .................................................................................. 9, 10

*Manantan v. Nat'l City Mortg.*, 2011 WL 3267706 (N.D.Cal. 2011).................................. 24

Manderville v. PCG&S Group, Cal.App. 4th 1486 (2007) ............................................ 14, 22

*Martinez v. Welk Group, Inc.*, 2011 WL 90313 (S.D. Cal. 2011) ....................................... 10

*MB Tech., Inc. v. Oracle Corp.*, 2010 WL 1576686 (N.D.Cal., 2010) ............................... 24

*McNeary–Calloway v. JP Morgan Chase Bank, N.A.*,
    863 F.Supp.2d 928 (N.D.Cal.2012).................................................................................. 24

*McNulty v. Reddy Ice Holdings, Inc.*,
    2009 WL 1508381 (E.D.Mich. 2009)........................................................................... 10, 11

*Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082 (N.D.Cal.2006) .................................. 24

*Overstock.com*, 151 Cal.App.4th 688 (2007) ....................................................................... 23

*Parrino v. FHP, Inc.* 146 F.3d 699 (9th Cir. 1998) .............................................................. 10

*Richard v. Baker*, 141 Cal.App. 2d 857 (1956) .............................................................. 14, 20

**RUSING LOPEZ & LIZARDI, P.L.L.C.**
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
34 Cal. 4th 979 (2005) ................................................................. 16

*Roskind v. Morgan Stanley Dean Witter & Co.*,
80 Cal.App.4th 345 (2000) ............................................................. 22

*Sandrini v. Branch,* 32 Cal.App.2d 707 (1939) ........................................ 6

*Small v. Fritz Companies, Inc.*, 30 Cal.4th 167 (2003) ............................ 12, 21

*Strigliabotti v. Franklin Resources, Inc.*,
2005 WL 645529 (N.D. Cal. 2005) ................................................. 23

**STATUTES**

California Bus. & Prof. Code §17200 ................................................... 21

California Corp. Code § 25401 ......................................................... 19

California Corp. Code § 25501 ......................................................... 19

California Corp. Code § 25504 ......................................................... 19

California Corp. Code § 25504.01 ...................................................... 19

**RULES**

California Code Civ. Proc. § 1856(c) .................................................... 6

Fed. R. Civ. Proc. 8(a)(2) .............................................................. 9

Fed. R. Civ. Proc. 12(b)(6). ........................................................... 4

**TREATISES**

23 Cal.Jur.2d, Fraud and Deceit, § 35 ................................................. 14

5 Witkin, Summary of Cal. Law (10th Ed. 2005) Torts, § 813 ......................... 13

5 Witkin, Summary of Cal. Law (10th Ed. 2005) Torts, § 814 ......................... 14

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

iv

Plaintiff Sand Dollar Partners, L.L.C. ("Sand Dollar") hereby opposes the Motion to Dismiss brought by Defendants Islet Sciences, Inc. ("Islet Sciences"), John Steel ("Steel") and Jonathan Lakey ("Lakey") (collectively "Movants"), and submits this Memorandum of Points and Authorities in support thereof.

## I.    FACTUAL BACKGROUND

Through this action, Sand Dollar seeks to hold Movants responsible for a series of deceptive statements, acts and omissions that caused Sand Dollar to expend more than $500,000 based upon a set of facts that was not – under any stretch of the imagination – as promised.

Beginning in April 2010, Defendant Steel began soliciting Sand Dollar's investment in Islet Sciences. (Second Amended Complaint, [hereinafter "Complaint" or "C"] ¶¶23-26). Steel represented that Islet Sciences had developed proprietary methods for isolating and encapsulating cell therapy products for the treatment of Type 1 Diabetes. (C¶29). Steel also represented that Islet Sciences acquired through a bankruptcy sale the intellectual property of another company specializing in this type of diabetes research, Microislet, Inc. ("Microislet"). (C¶¶25-26). Steel represented that the acquisition of Microislet's intellectual property, together with the services of Defendant Lakey – a leading authority in islet transplantation therapy for the control of Type 1 Diabetes – put Islet Sciences years ahead in the process for securing FDA approval for a new investigational drug. (C¶28).

Sand Dollar was presented with a confidential Islet Sciences PowerPoint that claimed Islet Sciences would "leverage . . . Microislet's time and $70M of development expense" and "change [its] investor base from 3,000 to 9." (C¶40). The PowerPoint stated that Islet Sciences needed $500,000 "bridge financing" for various purposes. (C¶38). Steel represented that Islet Sciences needed a cash investment to cover its specific budgetary needs, and also needed an investor to purchase a shell corporation with which Islet Sciences would undergo a reverse merger. (C¶¶65, 73, 79-80).

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

To further induce Sand Dollar's investment, Steel and Lakey met with members of Sand Dollar at the University of California Irvine on May 7, 2010, and toured laboratory facilities which Lakey stated were being used by Islet Sciences for tests and trials. (C¶¶55-58). During the tour, Steel repeated his prior representations about Islet Sciences leveraging the work of Lakey and Microislet to leap years ahead in the process for FDA approval of a Type 1 Diabetes drug. (C¶¶57). Steel and Lakey claimed that human clinical trials of the drug could begin within six months. (C¶56).

Based upon all of the representations of Steel and Lakey, on May 17, 2010, Sand Dollar and Islet Sciences executed a contract entitled "Promissory Note" (the "Note"). (C¶¶66-67). The Note required Sand Dollar to provide $500,000 to Islet Sciences, but did not specify a repayment date. (C¶67). Rather, the Note stated that at any time, Sand Dollar could convert to 25 percent of Islet Sciences' fully-diluted common stock. (C¶68). The Note also provided Sand Dollar with one seat on Islet Sciences' board of directors – an entitlement that was not tied to Sand Dollar's right to convert the Note to stock. (C¶69).

The Note did not document the full agreement of the parties with respect to the form of consideration to be paid by Sand Dollar. The parties agreed and understood that Sand Dollar would provide funds in installments, as needed, to meet Islet Sciences specific budgetary needs. (C¶73). In furtherance of this agreement, the day before the parties executed the Note, Steel emailed to Sand Dollar a proposed budget showing Islet Sciences' projected expenses through November 2010 to be $335,000. (C¶65). Thereafter, over the next 90 days, Sand Dollar provided, and Islet Sciences accepted, four installment payments totaling $357,000. (C¶¶74-78).

Additionally, the parties agreed that Sand Dollar would be credited its costs for investigating and purchasing the shell corporation with which Islet Sciences would undergo a reverse merger. (C¶¶79-80). With the knowledge and encouragement of Steel, who was acting as Islet Sciences' agent, Sand Dollar performed its end of the bargain and

expended another $170,000 on two corporate entities for the purposes of a reverse merger. (C¶¶83-92). Steel later rejected both corporate entities, and Islet Sciences refused to credit Sand Dollar for these expenditures which were induced by Steel. (C¶¶89-92).

As a result of Islet Sciences' refusal to accept the consideration that had been agreed upon, Sand Dollar was ultimately granted just 17.85 percent of Islet Sciences' common stock – not the 25 percent of *fully-diluted* common stock set forth in the Note. (C¶¶129, 174). Moreover, Sand Dollar's 17.85 percent was cut in half – to less than 9 percent – when Islet Sciences diluted its shares. (C¶108). Islet Sciences also refused to provide Sand Dollar with its guaranteed seat on the Islet Sciences board of directors – an absolute contractual right that was not tied to the stock conversion. (C¶193). Movants also blocked Sand Dollar's repeated attempts to inspect Islet Sciences financial records, actively concealing the evidence that large portions of Sand Dollar's cash investment were unaccounted for in Islet Sciences' books. (C¶¶119-147). Sand Dollar ultimately discovered that Steel improperly took $50,000 as a personal loan. (C¶147).

Through the course of this dispute, many other misrepresentations and omissions have come to light. Importantly, the intellectual property which was a key inducement to Sand Dollar's investment, was not remotely as advertised. Despite the conduct and representations of Lakey and Steel during the May 7, 2010 tour of the UC Irvine labs, Lakey did not assign his intellectual property rights to Islet Sciences until August 30, 2010. (C¶¶109-110). As for the Microislet intellectual property, and Islet Sciences' plan to leverage Microislet's $70 million development expense, Sand Dollar later learned that Islet Sciences did not own the intellectual property. (C¶¶181,187). Despite the express representations of Movants, in April 2009, all of the Microislet intellectual property was purchased through bankruptcy by another company, a Nevada corporation named Isletech, Inc. ("Isletech"). (C¶¶180-182). Movants knew that Isletech had purchased the Microislet intellectual property, and purposefully concealed this fact from Sand Dollar in the course

3:12-cv-02969-MMA(RBB)

of inducing Sand Dollar to expend more than $500,000 through a litany of false statements and half-truths. (C¶¶183-188).

## II. LEGAL STANDARD

A motion to dismiss brought under Rule 12(b)(6), Fed. R. Civ. Proc., tests the sufficiency of the pleadings. A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). The court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Kneivel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir.2005). Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*, at 1950. A claim has "facial plausibility," and a motion to dismiss must be denied, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

## III. ARGUMENT

### A. Sand Dollar Has Properly Stated A Claim For Breach Of Contract.

Movants make a number of misleading legal and factual arguments in support of the assertion that Sand Dollar's breach of contract claim should be dismissed for lack of consideration. All of Movants' arguments miss the mark.

As an initial matter, Movants raise questions as to the character of the contract at issue here, which is entitled "Promissory Note." Despite this nomenclature, the contract is

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

an executory contract – not an executed and negotiable promissory note.[1]  *See Linville v. Linville*, 132 Cal.App.2d 800, 803 (1955) ("In an executory contract some act remains to be done, while in an executed contract everything is completed at the time of the agreement without any outstanding promise calling for fulfillment by the further act of either party.").

As specifically alleged in the Complaint, Defendant Steel initially presented Sand Dollar with a proposed Promissory Note for $500,000, and the parties subsequently negotiated additional terms including the right to convert to 25 percent of Islet Sciences fully-dilluted common stock, and the entitlement to one seat on the board of directors. (C¶¶46, 59, 62-63).  The parties also agreed upon executory payment terms, providing that Sand Dollar would provide the funds in installments, as needed, to meet Islet Sciences' "bridge financing" needs and expenses, and that Sand Dollar would be credited for its costs in purchasing the shell company with which Islet Sciences would undergo a reverse merger.  (C¶¶ 65-73, 79-80).

### 1.  Consideration For The Note Will Be Proven Through Parol Evidence.

Movants argue that the Sand Dollar's consideration under the contract – specifically, installment payments and credit for purchasing the shell corporation – is "implausible," and cannot be considered because of the contract's integration clause. (Cite).  Movants ignore the fact that all of these terms have been specifically alleged in the Complaint, and that these terms can and will be proven through admissible parol evidence.

"It is well settled that the question of consideration may always be inquired into and that the actual consideration of a contract may be shown by parol evidence even though a different consideration appears in the writing."  *Bowman v. Union Trust Co. of San Diego,*

---

[1] Sand Dollar does not dispute that the Note was properly included in the record on this motion to dismiss because it is specifically referenced and relied upon in the Complaint.

41 Cal.App.2d 397, 403 (1940); *Sandrini v. Branch,* 32 Cal.App.2d 707, 708 (1939) (same).

Additionally, California **Code of Civil Procedure** § 1856(c) expressly provides that the terms set forth in a writing may be explained or supplemented by parol evidence of the parties' "course of performance." The reason underlying that statutory provision is that "[t]he conduct of the parties after execution of the contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions." *Kennecott Corp. v. Union Oil Co.,* 196 Cal.App.3d 1179, 1189 (1987). As the California Supreme Court explained:

> This rule of practical construction is predicated on the common sense concept that 'actions speak louder than words.' Words are frequently but an imperfect medium to convey thought and intention. When the parties to a contract perform under it and demonstrate by their conduct that they knew what they were talking about the courts should enforce that intent.

*Crestview Cemetery Assn. v. Dieden,* 54 Cal.2d 744, 754 (1960).

Here, the actions of the parties in negotiating and performing the contract are evidence that the written Note did not set forth the full agreement of the parties with respect to the consideration to be given by Sand Dollar. As alleged in the Complaint, Movants solicited Sand Dollar's investment to meet Islet Sciences' "bridge financing" needs. (C¶38). On May 16, 2010, the day before the parties executed the contract, Defendant Steel transmitted to Sand Dollar a projected budget showing that Islet Sciences would need $335,000 from June through November of 2010. (C¶65). This is evidence that the parties understood and agreed that funds were to be provided as needed to cover Islet Sciences' specific budgetary needs. Why else would Steel have disclosed Islet Sciences' budgetary needs to Sand Dollar? Sand Dollar's provision of installment payments totaling $357,000, and Islet Sciences acceptance of the payments, is the best evidence of the parties' agreement. *See Dieden*, supra.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

Additionally, the parties agreed that Sand Dollar would be credited its costs for investigating and purchasing the shell corporation with which Islet Sciences would undergo a reverse merger. (C¶¶79-80). To this end, in early-June 2010, Defendant Steel encouraged Sand Dollar to purchase Reykjavik Partners, Inc. ("Reykjavik") for $50,000. (C¶83). Thereafter, with Steel's knowledge, Sand Dollar expended $10,000 to hire New York attorney Richard Lane, who began communicating with Steel regarding the process and requirements for a reverse merger. (C¶87). Defendant Steel scheduled a meeting with attorney Lane in New York in early-July 2010 to discuss the reverse merger with Reykjavik. (C¶89). This conduct, as specifically alleged in the Complaint, is a course of performance demonstrating that the parties did, in fact, agree that Sand Dollar's consideration would include the purchase of a shell corporation.

If not for this agreement, and Steel's encouragement, Sand Dollar would not have expended $60,000 to purchase Reykjavik and retain attorney Lane to work with Steel on the reverse merger. Although Steel later reneged on the Reykjavik shell, his actions and performance through early-July 2012 are the best evidence of the parties' agreement. *See Kennecott Corp.,* 196 Cal.App.3d at 1189 (the conduct of the parties after execution of the agreement and before any dispute has arisen "affords the most reliable evidence of the parties' intentions.").

Consistent with the parties' agreement and course of performance, Sand Dollar later expended $120,000 for another corporation, Ventana Biotech, Inc. ("Ventana") for the purpose of satisfying its obligation to provide Islet Sciences with a corporate vehicle for a reverse merger. (C¶¶90-92). Sand Dollar purchased Ventana at the behest of Defendant Steel, who subsequently hedged and then rejected Ventana after Sand Dollar had entered into the transaction. (C¶¶90-92).

Movants claim that Steel never encouraged Sand Dollar to purchase Ventana, and that Sand Dollar purchased Ventana on its own volition and for its own benefit. (Motion at

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

6-10). That assertion is of no moment, however, as Sand Dollar properly alleged, and intends to prove, otherwise. (C¶90). At most, Movants have raised a dispute of fact that should not factor into this Court's determination on the instant motion to dismiss. Indeed, Movants acknowledge that "the issue of what was agreed may sound factual." (Motion at 6). Not only does it *sound* factual – it is factual. It is the ultimate factual issue for this claim. "It is well-established that questions of fact cannot be resolved or determined on a motion to dismiss for failure to state a claim upon which relief can be granted." *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Service Inc.*, 911 F.2d 242, 245 (9th Cir., 1990).

### 2.  The Extraneous Email Is Not Incorporated By Reference In The Complaint.

In support of their argument that the $120,000 used to purchase Ventana should not count as consideration, Movants place great emphasis upon an email from Sand Dollar member Dan Ford to Steel, dated September 4, 2010. According to Movants, this "correspondence authored by Plaintiff's main principal . . .contradict[s] its liability theory." (Motion at 9). Importantly, Dan Ford was not, as Movants state numerous times without support, Sand Dollar's "main principal." Rather, Mr. Ford is a member of the company who acted as an agent for specific purposes at various times in 2010. (*See* Complaint ¶35). The scope and purpose of Mr. Ford's agency – just as Steel's agency for Islet Sciences – is a question of fact that will be fleshed out through discovery and disclosure.

Notwithstanding Mr. Ford's authority to speak for and bind Sand Dollar, the email is not properly before this Court on this motion to dismiss. Through a strained and misleading presentation of the doctrine of incorporation by reference, Movants build their entire argument upon an extraneous email that was not cited to, quoted, or relied upon in the Complaint. The lengthy discussion of the email is futile, as the law does not support the expansive application of incorporation by reference urged by Movants.

8

On a motion to dismiss, "the court generally may not consider materials outside the pleadings." *Am. Contractors Indem. Co. v. United States*, 570 F.3d 1373, 1376 (Fed.Cir.2009). "Consideration of extraneous material in judging the sufficiency of the complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only that the complaint contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). While the four corners of the pleadings generally control the scope of the court's review, other documents may properly be considered if they are "(1) attached to the complaint; (2) incorporated into the complaint by reference; or (3) integral to the complaint." *Madu, Edozie & Madu, P.C. v. Socketworks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010).

The email upon which Movants base their argument was not attached to the Complaint. Therefore, it may be considered *only if* it was incorporated by reference or "integral" to the Complaint. *Id.* Neither exception applies to the email.

In *Madu,* the court, in refusing to consider extraneous emails on a motion to dismiss, provided one of the most fulsome explanations of the stringent requirements for consideration of documents that – like the email at issue here – are not attached to the pleadings. "To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents." *Madu*, 265 F.R.D. at 123 (internal quotations omitted). That standard is not satisfied by a passing mention of the document in question. *Id.* Indeed, "'limited quotation' of documents not attached to the complaint 'does not constitute incorporation by reference.'" *Id.,* quoting *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985). An equally exacting standard applies in determining whether an extra-pleading document is "integral" to the complaint. "[T]he complaint must 'rely heavily upon the document's terms and effect' for that document to be integral." *Madu*, 265 F.R.D. at 123, quoting *Int'l Adiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69,

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

72 (2d Cir. 1995). Importantly, *all* of the cases cited and relied upon in Movants' superficial presentation of the doctrine of incorporation by reference confirm that the extraneous document must meet these rigid requirements. *See Martinez v. Welk Group, Inc.*, 2011 WL 90313, at *3 (S.D. Cal. 2011) (Anello, J.) (document may be considered if "the plaintiff refers extensively to the document" or "the plaintiff's claim depends upon the contents of the document."); *Parrino v. FHP, Inc.* 146 F.3d 699, 705-706 (9th Cir. 1998) (court may consider extra-pleading document "whose contents are alleged in the complaint" or "upon which the plaintiff's complaint necessarily relies."); *McNulty v. Reddy Ice Holdings, Inc.*, 2009 WL 1508381, at *5 (E.D.Mich. 2009) (court may properly consider documents "referred to in the complaint" and "central to the claims therein").

Here, the email in question is not referred to, alluded to, or quoted in the Complaint. There is thus no credible argument that the email was incorporated by reference into the Complaint. *See Madu*, 265 F.R.D. at 123. Nor was the email "integral" to the Complaint. Sand Dollar does not, under even the most liberal view of the allegations, "rely heavily upon" the email's terms and effect in the Complaint. *See id.* Neither the email, nor its contents, are relied upon in any manner in the Complaint.

When viewed in the light most favorable to Movants, the email is simply evidence supporting one of Movants' defenses. To that end, *McNulty*, cited by Movants, is instructive. In *McNulty*, the court applied the incorporation by reference rule to consider a severance release, portions of which were specifically referenced in the complaint to support plaintiff's claims. *McNulty*, 2009 WL 1508381, at *5-6. In considering the extraneous document, the court distinguished *J.P. Morgan Trust Co. v. Mid-America Pipeline Co.*, 413 F. Supp. 2d 1244, 1258 (D.Kan. 2008), wherein the court refused to consider extraneous documents that were "central to an affirmative defense, not to plaintiff's claims." *Id.,* at *6. That distinction is particularly apt here, as the email

referenced by Movants was neither referenced, nor relied upon, nor "central" to Sand Dollar's claims. At best, it could be considered as support for Movants' defenses.

Equally unavailing is Movants' assertion that the email should be considered because the Complaint references *other* emails. Movants again rely upon *McNulty*, where the court reasoned that by referencing only limited parts of the severance release that helped his case, "while hiding those which clearly are relevant and applicable, Plaintiff has put the Release in play." *McNulty,* 2009 WL 1508381, at *6. The court in *McNulty* was clearly concerned with considering one particular document that was, in fact, referenced in the complaint. Here, by contrast, Movants seek to submit an email that was not referenced in the Complaint on the ground that the email is part of a larger universe of emails, some of which were referenced. *McNulty* does not provide authority for extending the doctrine of incorporation by reference to documents that were never referenced in the Complaint.

There are numerous emails and communications among the parties that will properly be included in the evidentiary record after full disclosure and discovery is complete in this matter. Sand Dollar respectfully submits that the full record of communications among the parties, when it is *properly* placed before the Court, will support Sand Dollar's claims and minimize the import of the email referenced by Movants. As the Second Circuit Court of Appeals explained, "[w]hen a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claim by examining an incomplete record." *Chambers*, 282 F.3d at 155.

In sum, all of the arguments raised by Movants in their attempt to defeat Sand Dollar's well-pleaded breach of contract claim are ineffective.

/ / /

/ / /

/ / /

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

**B. Sand Dollar Has Properly Stated A Claim For Fraud.**

Movants seek to dismiss Sand Dollar's fraud claim on three separate grounds. As set forth below, all three arguments are unfounded.

First, Movants ignore dozens of allegations in Sand Dollar's exceedingly detailed and specific Complaint in arguing that there is no allegation supporting the requisite element of proximate causation. At the pleading stage, the complaint must show "a cause and effect relationship between the fraud and damages sought; otherwise no cause of action is stated." *Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 202 (2003). "Assuming ... a claimant's reliance on the actionable misrepresentation, no liability attaches if the damages sustained were otherwise inevitable or due to unrelated causes." *Goehring v. Chapman University*, 121 Cal.App.4th 353, 365 (2004).

Movants advance a myopic view of Sand Dollar's Complaint in suggesting that the only injury alleged was "Plaintiff's inability to obtain the additional stock it seeks in its Complaint." (Motion at 12). This is demonstrably false. Among the damages suffered by Sand Dollar are the $180,000-plus in costs incurred in researching and purchasing Reykjavik and Ventana due directly to the fraudulent encouragement and inducement of Defendant Steel. (C¶¶79-92). Sand Dollar also advanced $357,000 in cash to Islet Sciences based upon the express representation that the company obtained the Microislet intellectual property in bankruptcy and would "leverage . . . Microislet's time and $70M of development expense." (C¶¶39-40, 66-78). These misrepresentations and omissions, among others, go to the heart of Sand Dollar's damages as they concern the value, assets and core purpose of Islet Sciences: the very inducement for Sand Dollar's investment.[2]

---

[2] Defendant Steel also provided Sand Dollar with Islet Sciences' specific budgetary needs, supporting Sand Dollar's knowledge and reasonable belief that their funds would be allocated to those specific needs. (C ¶¶38, 65). Steel did not disclose that he would take

Continued on Next Page

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

3:12-cv-02969-MMA(RBB)

Even if Sand Dollar were granted additional Islet Sciences stock to raise its ownership percentage to the 25 percent promised by Movants, that would not change the fact that Sand Dollar was fraudulently induced to expend more than $500,000 on a company that is not remotely as represented. Any suggestion that these expenditures "were otherwise inevitable or due to unrelated causes" would be to ignore the litany of false statements and omissions which induced them. *See Goehring*, 121 Cal.App.4th at 365 (setting forth requirement for proximate causation). Simply put, Movants' proximate causation argument is belied by numerous allegations which Movants choose to ignore.

For their second argument, Movants suggest that Sand Dollar was on constructive notice of Movants' fraudulent and deceptive statements and omissions, and that Sand Dollar's reliance was thus unreasonable. According to Movants, the false statements and omissions concerning Islet Sciences' ownership of Microislet's intellectual property rights are not actionable as fraud because Sand Dollar could have undertaken its own investigation and "determined that a different company was, per public court records, the apparent purchaser of the asset in question." (Motion at 13). This argument fails as a matter of law.

As an initial matter, "[t]here is ordinarily no duty to investigate, and the former defense of contributory negligence of the plaintiff was held not to be a defense to the intentional tort of fraud." 5 Witkin, Summary of Cal. Law (10th Ed. 2005) Torts, § 813, at 1174. "The mere existence of an opportunity to investigate, or of sources of information, will not preclude the plaintiff from relying on the representations." *Id.*, at 1174-1175. Moreover, it is well-settled in California law that "[t]he plaintiff is not barred by constructive notice, *e.g.*, where public records disclose the falsity of representations; the

---

$50,000 as a "personal loan," which is contrary to the purpose for which Sand Dollar made its investment. (*Id.*, ¶¶147, 207)

recording acts are designed for the protection of bona fide purchasers, not persons guilty of fraud." 5 Witkin, Summary of Cal. Law (10th Ed. 2005) Torts, § 814, at 1176; *Richard v. Baker*, 141 Cal.App. 2d 857, 864 (1956) ("a party to whom fraudulent representations are made is not bound to make an investigation which would reveal the facts.").

In *Grange Co. v. Simmons*, the Court explained that:

> [e]very contracting party has the right to rely, where his reliance is otherwise justifiable, on the express statement of an existing fact, the truth of which is known to the opposite party and unknown to him, as the basis of a mutual agreement; and he is under no obligation to investigate and verify statements to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith.
> . . .
> **The doctrine of constructive notice does not apply where there has been such a representation of fact. If the representation is of a character to induce action and does induce it, that is enough**. It matters not that a person misled may be, in some loose sense, negligent, for it is said not to be just that a man who deceives another should be permitted to say to him, 'You ought not to believe or trust me,' or, 'You are yourself guilty of negligence.'

203 Cal.App.2d 567, 576 (1962) (Emphasis added), *Citing* 23 Cal.Jur.2d, Fraud and Deceit, § 35. More recently, in *Manderville v. PCG&S Group*, the Court reaffirmed the longstanding tenet of California law that "in an action for fraud or deceit, negligence on the part of the plaintiff in failing to discover the falsity of the defendant's statement is no defense when the misrepresentation was intentional." 146 Cal.App. 4th 1486, 1502 (2007) (holding that buyer's failure to examine county general plan was not a defense to an action based on the seller's alleged misrepresentation that the property could be subdivided). Here, The Complaint plainly alleges that Islet Sciences' ownership of Microislet's intellectual property was misrepresented – and purposefully hidden by omission – with the intent to induce Sand Dollar's investment. (*See* Complaint ¶¶35-45, 178-188, 207-213). Movants' arguments about constructive notice thus have no legal merit.

Finally, Movants argue that there are no allegations of false statements or fraudulent intent upon the part of Lakey. This is false. The Complaint alleges that Lakey participated in the vetting of the written "Executive Summary Overview" and confidential "PowerPoint" which was presented to Sand Dollar and misrepresented Islet Sciences' ownership of Microislet's intellectual property. (C¶36-40). Additionally, on May 7, 2010, Lakey took Sand Dollar members on a tour of his UC Irvine lab facilities and falsely represented that they were being used for Islet Sciences' research. (C¶58). Lakey failed to disclose that Islet Sciences had existed for a day or two at that point, and that Lakey had not yet assigned any intellectual property interests to Islet Sciences. (C¶¶47, 109-110, 207). During that same meeting and tour, Steel repeated all of the false representations that ultimately induced Sand Dollar's investment, including the ownership and use of Microislet intellectual property. (C¶¶55-61). Lakey knew the falsity of these statements and was fraudulently complicit in playing along. (C¶¶184, 188, 207-209).

For all of these reasons, Movants' arguments fail and Sand Dollar has properly stated a claim for fraud.

**C. Sand Dollar Has Properly Stated A Claim For Negligent Misrepresentation.**

Movants cite the "economic loss rule" in arguing that Sand Dollar's negligent misrepresentation claim should be dismissed. (Motion at 14). The economic loss rule is a specific application of the general prohibition against recovery of tort damages in breach of contract cases. *Erlich v. Menezes,* 21 Cal.4th 543, 551-552 (1999).

Predictably, Movants attempt to characterize Sand Dollar's negligent misrepresentation claim as nothing more than the failure to make good on contractual promises. (Motion at 14, Fn. 13). This assertion is disproven by the numerous allegations in the Complaint demonstrating that Sand Dollar was induced by false promises in the formation and performance of the Note. (*See* Section III.B, above). Indeed, Sand Dollar's

3:12-cv-02969-MMA(RBB)

negligent misrepresentation claim mirrors its fraud claim. Both claims fall well outside the reach of the economic loss rule.

The economic loss rule does not apply where, has here, conduct resulting in the formation and breach of a contract also violates an independent duty of tort law. *Erlich,* 21 Cal.4th at 551-552*; Harris v. Atlantic Richfield Co*., 14 Cal.App.4th 70, 77-78 (1993). As the California Supreme Court explained in *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 991-992 (2005), a breach of a contractual promise is generally enforced through contract law, "except when the actions that constitute the breach violate a social policy that merits imposition of tort remedies."

California has "a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices." *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal.4th 1036, 1064 (1999). As stated by the California Supreme Court:

> A party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract. No rational party would enter into a contract anticipating that they are or will be lied to.

*Robinson Helicopter Co.*, 34 Cal. 4th at 993. "[A] contract is not a license allowing one party to cheat or defraud the other." *Id.,* 34 Cal. 4th at 992, quoting *Grynberg v. Citation Oil & Gas Corp.,* 573 N.W.2d 493, 501 (S.D.1997). Accordingly, courts have declined to apply the economic loss rule in cases where a false statement causes a party to enter a contract. *E.g., Frye v. Wine Library, Inc.*, 2006 WL 3500605, *2 (N.D.Cal. Dec. 4, 2006) (economic loss rule inapplicable where plaintiff alleged that defendants made false statements about the rarity and value of bottles of wine in order to induce plaintiff to purchase them); *Krzyzanowsky v. Orkin Exterminating Co., Inc.*, 2009 WL 481267, at *11 (N.D.Cal. Feb. 24, 2009) (rule did not apply where plaintiffs alleged that pest control company induced a contract through misleading statements regarding the nature and effect of its termite extermination services).

16

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

These authorities are particularly instructive and applicable here. Movants made a series of material misrepresentations and omissions, all with the purpose of convincing Sand Dollar to provide a sizeable investment in a company that was not as represented. These misrepresentations and omissions violated a tort duty that is independent of any contractual obligation: the "legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices." *Diamond Multimedia Systems*, 19 Cal.4th at 1064. For this reason, the economic loss rule does not apply, and Sand Dollar has properly stated a claim for negligent misrepresentation.

**D. Sand Dollar Has Properly Stated A Claim for Aiding And Abetting.**

In moving to dismiss Sand Dollar's claim for aiding and abetting breach of fiduciary duty, Movants assert that Steel and Lakey had no knowledge of any tort committed by *"any defendant,"* and provided no assistance or encouragement in the commission of any such tort. (Motion at 16). As with their other arguments, Movants ignore the well-pleaded allegations in the Complaint demonstrating otherwise.

Movants correctly note that the elements of a claim for aiding and abetting are (1) knowledge that another's conduct constitutes a breach of duty; and (2) provision of "substantial assistance or encouragement to the other to so act." (*Id.,* quoting *In re First Alliance Mortgage Co.*, 471 F.3d 977, 993 (9th Cir. 2006)). They are incorrect, however, in arguing that the Complaint lacks allegations to support those elements.

The Complaint alleges that Defendants Kinkelaar and Procopio breached fiduciary duties to Sand Dollar by refusing to honor Sand Dollar's designation of a board member; failing to protect Sand Dollar's right to 25 percent of Islet Sciences' commonly held stock; failing to provide information about Islet Sciences' affairs that was material to Sand Dollar's rights and interests in the company; failing to disclose to Sand Dollar facts which called into question Islet Sciences' ownership rights in certain intellectual property; and making false statements in Islet Sciences' Certificate of Amendment. (C¶227).

17

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

When considering the complicity of Steel and Lakey in this conduct, it is important to note that they were agents of Islet Sciences appointed by the company's control person, Kinkelaar. From the date of incorporation of Islet Sciences, through until the board of directors was constituted many months later, Kinkelaar was the sole incorporator, and thus the control person for Islet Sciences. (C¶210); *see* 8 Del.C. § 108 (describing role of incorporator of Delaware corporation). The deceptive statements and omissions by Defendants Steel and Lakey were made as agents under the direction and control of Kinkelaar. *See* Cal. Corp. Code §25504 (control persons jointly and severally liable for actions of agents). Given this agency relationship, Movants cannot credibly claim lack of knowledge or involvement in the fiduciary breaches of Kinkelaar.

Moreover, any fair reading of the Complaint supports the conclusion that Kinkelaar and Steel were acting in concert with respect to the ongoing deception and improper freezing-out of Sand Dollar. For instance, when Sand Dollar raised repeated questions to Kinkelaar about holes in Islet Sciences' financial records, it was Defendant Steel who finally fessed up to the fact that $50,000 missing from the books was, in fact, a personal loan to himself. (C¶¶146-147). If Kinkelaar and Steel had not been working together, Steel would not have responded to these inquiries directed at Kinkelaar.

Similarly, emails referenced in the Complaint demonstrate that Kinkelaar and Steel were working together with respect to the Islet Sciences Certificate of Amendment in which Kinkelaar falsely certified that the corporation "has not received any payment for any of its stock." (C¶¶102-107). The Certificate of Amendment failed to disclose a May 12, 2010 assignment executed by Steel and Defendant Rhodes, which purported to transfer the Microislet intellectual property to Islet Sciences in consideration for Rhodes' founder's shares in the company. (C¶44). In light of his emails with Kinkelaar concerning the Certificate of Amendment, and given that he was a party to the assignment with Rhodes, Steel certainly knew that the certification was false.

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

Likewise, both Steel and Lakey were aware of the falsity of the representations concerning the purported ownership the Microislet intellectual property *and* Lakey's intellectual property, making them complicit in Kinkelaar's assurance to Sand Dollar that all of Islet Sciences' proprietary contracts were in order.  (C¶178).  Importantly, in August 2010, Lakey executed an assignment that purported to transfer his intellectual property rights to "in vitro maturation of porcine islets in an alginate capsule" and "novel islet maturation of media for islet maturation" in exchange for Two Million (2,000,000) shares of Islet Sciences' Common Stock.  (C¶109-110).  Lakey knew, however, that more than two months prior he had led Sand Dollar to believe that Islet Sciences already had those rights.  (*See* C¶¶56-58).  Lakey made this misrepresentation as an agent of Kinkelaar – the sole incorporator and *de facto* principal of Islet Sciences, who had a duty to know these facts and disclose them to Sand Dollar.  (C¶17).

The allegations of the Complaint, taken as true, are more than sufficient to establish that Steel and Lakey aided and abetted the breaches of fiduciary duty by Kinkelaar.

**E.  Sand Dollar Has Properly Stated A Claim For Securities Fraud.**

Movants make two inapt arguments in an effort to dismiss Sand Dollar's securities fraud claims, which are based upon false statements made by defendants in connection with the sale of a security.  *See* California Corp. Code §§ 25401, 25501, 25504 and 25504.01.

First, Movants echo their fraud arguments in arguing there was no misrepresentation because Sand Dollar should have been on constructive notice that Islet Sciences did not – despite the express representations of Movants – own the intellectual property of Microislet. (Motion at 17).  It is quite incredible and telling that Movants would attempt to defeat numerous claims through the assertion that Sand Dollar and its members should have known Movants were trying to defraud them.  *See Grange,* 203 Cal.App. 2d at 576 (rejecting the argument that a party who perpetrates a fraud can escape liability by

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

suggesting, "You ought not to believe or trust me."). Nonetheless, as stated fully above in Section III.B, the constructive notice argument fails as a matter of law because "a party to whom fraudulent representations are made is not bound to make an investigation which would reveal the facts." *Richard*, 141 Cal.App. 2d at 864.

Second, Movants make the odd assertion that the false statements and omissions at issue here are not actionable as securities fraud because they were not made "in connection with" the purchase of a security. (Motion at 17). According to Movants, Sand Dollar has not satisfied this requirement "because it failed to pay the consideration for the security and thus, did not purchase the subject additional securities." (Motion at 17). This consideration argument is nonsensical, and misses the "in connection with" requirement.

The Complaint alleges that all of the misrepresentations and omissions made by Movants induced Sand Dollar to invest more than $500,000 in Islet Sciences. Movants tacitly acknowledge that their efforts to induce Sand Dollar's investment were related to the transfer of securities, as they ultimately issued Sand Dollar some, but not all, of the Islet Sciences stock that had been agreed upon. (C¶174). Based upon the lesser percentage of Islet Sciences' stock that was actually issued to Sand Dollar, Movants cannot deny that all of the representations that induced the transaction were "in connection with" the sale of securities. Simply put, the consideration argument is a factual contract issue – not a statutory securities fraud issue.

Moreover, as set forth above, Sand Dollar has properly alleged that it paid consideration for 25 percent of the fully-diluted common stock of Islet Sciences. Any dispute as to the validity of the consideration paid by Sand Dollar – specifically, the $170,000 expended on Reykjavik and Ventana – is a question of fact to be resolved after full disclosure and discovery. *See Cook*, 911 F.2d at 245 ("questions of fact cannot be resolved or determined on a motion to dismiss" for failure to state a claim).

For these reasons, Sand Dollar has properly stated a claim against Movants for securities fraud.

### F. Sand Dollar Has Properly Stated A Claim Under The UCL.

Sand Dollar's claim for violation of California Business & Professions Code §17200 (the "UCL") is based upon the same misrepresentations and omissions that support its claims for fraud and negligent misrepresentation. Movants argue, ineffectively, that the claim fails for lack of causation or justifiable reliance. (Motion at 18).

With respect to causation, Sand Dollar's UCL claim survives dismissal for the same reasons as the fraud claim. Indeed, in 2009, the California Supreme Court addressed the causation requirement for UCL actions based upon misrepresentations, and concluded that the plaintiff "must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *In re Tobacco II Cases*, 46 Cal.4th 298, 306 (2009).

Here, the Complaint sets forth a multitude of allegations demonstrating that Sand Dollar did, in fact, rely upon the deceptive and misleading statements of Movants by investing more than $500,000 in a company that was not as advertised. Moreover, Movants actively misled Sand Dollar as to the terms of their investment, as Sand Dollar spent $170,000 purchasing Rejkjavik and Ventana upon the induced expectation that these expenditures would be credited to their investment in Islet Sciences. These allegations easily satisfy the fraud causation standard. *See Small*, 30 Cal.4th at 202 (at the pleading stage, the complaint must show "a cause and effect relationship between the fraud and damages sought.").

With respect to reliance, Movants again argue that Sand Dollar was not justified in its reliance upon their misrepresentations regarding Islet Sciences' ownership of the Microislet intellectual property. Again, this argument fails as a matter of law because a plaintiff's failure to discover the truth "is no defense when the misrepresentation was

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

intentional." *Manderville*, 146 Cal.App.4th at 1502. Here, Sand Dollar has properly alleged that all of Movants' misrepresentations and omissions were intentional, and made with the express purpose of inducing Sand Dollar's investment. The reasonable reliance argument is just as defective here as it is with respect to Sand Dollar's claims for fraud and securities fraud.

Finally, Movants argue that the UCL claim should be dismissed because the UCL does not apply to securities transactions. (Motion at 20). The argument is based upon an intermediate appellate decision, *Bowen v. Ziasun Tech, Inc*., 116 Cal. App. 4th 777, 788 (2004), which held that "Section 17200 does not apply to securities transactions." *Bowen*, however, is not binding upon this Court. *Bowen* is a single, intermediate appellate decision that is inconsistent with the holdings of other California appellate courts, and conflicts with the apparent intent of the Legislature in enacting the UCL.

Another division of the California Court of Appeal noted in *Roskind v. Morgan Stanley Dean Witter & Co*., 80 Cal.App.4th 345, 356 n.8 (2000), that section 17200 has "always been given a broad and sweeping ambit by our Legislature and our Supreme Court," and "[it] contains no language supporting an exclusion for securities." The *Roskind* court, in commenting upon the scope of the UCL, noted that:

> [T]he Legislature . . . intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur. Indeed, ... the section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable new schemes with the fertility of man's invention would contrive.

*Id.* (quoting *American Philatelic Soc. v. Claibourne*, 3 Cal.2d 689, 698 (1953)) (internal quotation marks omitted).

Similarly, in *Overstock.com, Inc. v. Gradient Analytics, Inc.*, which was decided by another California appellate court after *Bowen,* the court relied upon *Roskind* in finding that the UCL "has always been given a broad and sweeping ambit by our Legislature and

3:12-cv-02969-MMA(RBB)

our Supreme Court." *Overstock.com*, 151 Cal.App.4th 688, 715 (2007). The *Overstock.com* decision also noted that the California Attorney General filed an amicus brief arguing that *Bowen* was wrongly decided. *Id.*, at 715, n.20.

The *Bowen* decision has likewise been limited and criticized by federal courts. For instance, in *In re: Charles Schwab Securities Litigation*, 257 F.R.D. 534, 553 (N.D. Cal. 2009) the Court noted that "the reach of the ruling [in *Bowen*]... is far from certain," and refused "to dismiss the claims on the pleadings based on *Bowen*." Similarly, in *Strigliabotti v. Franklin Resources, Inc.*, 2005 WL 645529 (N.D. Cal. 2005), the District Court denied a motion to dismiss a UCL claim challenging a scheme to overcharge investors in the management of securities and noted that "California courts have expressly held that federal securities laws do not preempt Section 17200 generally." *See also Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 1526394 (N.D.Cal. Apr. 15, 2010) (allowing claim against Bank for aiding and abetting the sale of fraudulent securities, where Bank did not participate in securities transactions).

In interpreting the UCL, this Court is bound by the state's highest court – not by the questionable holding of an intermediate appellate court. *Chemstar, Inc. v. Liberty Mut. Ins. Co.*, 41 F.3d 429, 432 (9th Cir.1994). *See also C.I.R. v. Bosch's Estate*, 387 U.S. 456,465 (1967) (decisions of intermediate appellate courts are persuasive "data"). Given the subsequent narrowing and distinguishing of *Bowen* by other intermediate appellate courts in California, it is not at all clear whether and to what extent the California Supreme Court would follow *Bowen*. Like the Northern District of California in *Charles Schwab*, this Court should thus refuse to dismiss Sand Dollar's UCL claim at the pleadings stage.

### G. Sand Dollar Has Properly Stated A Claim For Unjust Enrichment.

Movants seek to dismiss Sand Dollar's Ninth Claim for Relief based upon the unequivocal assertion that a claim for unjust enrichment is not recognized under California law. Movants fail to mention, however, that California courts are "squarely divided on this

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

point." *MB Tech., Inc. v. Oracle Corp.*, 2010 WL 1576686, at *4 (N.D.Cal., 2010) Indeed, "[t]he state and the federal courts appear to be unclear whether in California a court may recognize a claim for 'unjust enrichment' as a separate cause of action." *Nordberg v. Trilegiant Corp.*, 445 F.Supp.2d 1082, 1100 (N.D.Cal.2006).

One line of cases holds that unjust enrichment is a separate cause of action that lies where there is (1) the receipt of a benefit, and (2) the unjust retention of the benefit at the expense of another. *Cont'l Cas. Co. v. Enodis Corp.*, 417 Fed. App'x 668, 670 (9th Cir.2011). The other line of cases identifies unjust enrichment as a "general principle" and not a cause of action. *Manantan v. Nat'l City Mortg.*, 2011 WL 3267706 (N.D.Cal. July 28, 2011). A claim for unjust enrichment is best understood, though, as a claim for restitution. *McNeary–Calloway v. JP Morgan Chase Bank, N.A.*, 863 F.Supp.2d 928, 964 (N.D.Cal.2012). To state a claim for restitution, a plaintiff must plead receipt of a benefit and the unjust retention of the benefit at the expense of another. *Id*.

Sand Dollar's Complaint included a cause of action for unjust enrichment out of an abundance of caution based upon the lack of clarity in California law. If the Court chooses to follow the line of cases holding that unjust enrichment is not a stand-alone claim, Sand Dollar respectfully submits that recovery for unjust enrichment/restitution is nonetheless available in the event that the required elements are proven. *See MB Tech., Inc.*, 2010 WL 1576686, at *4 (noting that dismissal of unjust enrichment claim does not preclude recovery on theory of unjust enrichment if required elements are proven).

## IV. CONCLUSION

Movants' overreaching request for dismissal all of the claims in Sand Dollar's Complaint is based upon a series of misleading and faulty legal arguments, and a self-servingly narrow presentation of the allegations in the Complaint. Taking all of Sand Dollar's factual allegations as true, as required on this motion to dismiss, all of the challenged claims in Sand Dollar's Complaint are properly supported. For all of the

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

1  reasons set forth above, Sand Dollar respectfully requests that the Court deny the Motion to

2  Dismiss and permit Sand Dollar to move forward and pursue these valid and meritorious

3  claims.

4  RUSING LOPEZ & LIZARDI, P.L.L.C.

5

6  s/ Todd M. Hardy

7  Todd M. Hardy
   *Attorney for Plaintiff Sand Dollar Partners, LLC*

8  Email: thardy@rllaz.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSING LOPEZ & LIZARDI, P.L.L.C.
6363 North Swan Rd., Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of April 2013, a copy of the foregoing has been transmitted electronically to the CM-ECF filing system for filing and transmittal along with copies transmitted to the following parties via the CM-ECF system.

| | |
|---|---|
| Douglas M. Butz, Esq.<br>Butz Dunn & Desantis, PC<br>101 West Broadway, Ste. 1700<br>San Diego, CA 92101-8289<br>dbutz@butzdunn.com<br>*Attorneys for Procopio, Cory Hargreaves*<br>*an Savitch LLP, Michael J. Kinkelaar*<br><br>William Maledon, Esq.<br>Geoffrey M.T. Sturr, Esq.<br>Osborn Maledon PA<br>2929 N. Central Ave., Suite 2100<br>Phoenix, AZ 85012<br>wmaledon@omlaw.com<br>gsturr@omlaw.com<br>*Attorneys for Procopio, Cory Hargreaves*<br>*an Savitch LLP, Michael J. Kinkelaar* | Michael L. Kirby<br>Jason M. Kirby<br>Kirby Noonan Lance & Hoge LLP<br>350 Tenth Ave, Suite 1300<br>San Diego, CA 92101-8700<br>mkirby@knlh.com<br>jkirby@knlh.com<br>*Attorneys for Islet Sciences Incorporated*<br>*and John Steel and Jonathan Lakey* |
| Bruce R. Huerlin, Esq.<br>Catherine North Nounfodji, Esq.<br>Heurlin Sherlock Laird<br>1636 N. Swan Road, Ste. 200<br>Tucson, AZ 85712-4096<br>bheurlin@hslazlaw.com<br>chounfodji@hslazlaw.com<br>*Attorneys for Islet Sciences Incorporated*<br>*and John Steel and Jonathan Lakey* | Lawrence A. Steckman, Esq.<br>Eaton & Van Winkle LLP<br>3 Park Avenue<br>New York, NY 10016<br>lsteckman@evw.com<br>*Attorneys for Islet Sciences Incorporated*<br>*and John Steel and Jonathan Lakey* |

s/__Todd M. Hardy_____

3:12-cv-02969-MMA(RBB)