IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

HONORABLE MICHAEL M. ANELLO, DISTRICT JUDGE

_____
                              )
SAND DOLLAR PARTNERS, LLC.,    )
                              )  CASE NO. 12 CV 2969-MMA
     PLAINTIFF,                )
                              )  APRIL 15, 2013
     VS.                       )  MONDAY, 3:00 PM
                              )
ISLET SCIENCES, INCORPORATED, )
                              )
     DEFENDANT.                )  MOTION HEARING
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR THE PLAINTIFF:          TODD MC CABE HARDY
                            MICHAEL RUSING
                            ATTORNEYS AT LAW
                            RUSING, LOPEZ & LIZARDI
                            33 NORSTOM AVE, STE. 2110
                            TUCSON, AZ  85701

FOR DEFENDANTS:             MICHAEL I. KIRBY
                            ATTORNEY AT LAW
                            KIRBY NOONAN LANCE & HAGE, LLP
                            350 TENTH AVE, STE. 1300
                            SAN DIEGO, CA 92101

                            DOUGLAS M. BUTZ
                            JOY L. SHEDLOSKY
                            ATTORNEYS AT LAW
                            101 W. BROADWAY, STE. 1700
                            SAN DIEGO, CA  92101

```
1    SAN DIEGO, CALIFORNIA, APRIL 15, 2013, MONDAY, 3:00 PM
2                            --oOo--
3         THE CLERK:  CALLING NUMBER 20 ON OUR CALENDAR, 12
4    CV 2969, SAND DOLLAR PARTNERS VERSUS ISLET SCIENCES,
5    INCORPORATED ON FOR A MOTION HEARING.
6         THE COURT:  GOOD AFTERNOON, FOLKS.  WHY DON'T YOU
7    ANNOUNCE YOUR APPEARANCES FOR THE RECORD.  I THINK I KNOW
8    MOST EVERYBODY.  BUT JUST TO MAKE SURE HERE.
9         MR. KIRBY:  GOOD AFTERNOON, YOUR HONOR.  MICHAEL
10   KIRBY FOR DEFENDANTS ISLET SCIENCES, JOHN STEEL AND
11   JONATHAN LAKEY.
12        THE COURT:  GOOD AFTERNOON.
13        MR. BUTZ:  DOUG BUTZ, JOY SHEDLOSKY ON BEHALF OF
14   PROCOPIO AND MICHAEL KINKELAAR.
15        THE COURT:  GOOD AFTERNOON.
16        MR. HARDY:  GOOD AFTERNOON, YOUR HONOR.  TODD
17   HARDY ON BEHALF OF PLAINTIFFS, SAND DOLLAR PARTNERS.  AND
18   I'M HEAR WITH MIKE RUSING.
19        THE COURT:  WHO IS?
20        MR. HARDY:  HE IS MY BOSS AND PARTNER.
21        THE COURT:  BOSS AND PARTNER?
22        MR. HARDY:  YEAP.
23        ATTORNEY:  MR. BUTZ IS MINE, YOUR HONOR.
24        THE COURT:  THANKS.  GO AHEAD AND HAVE A SEAT,
25   FOLKS.  WELCOME TO OUR COURTROOM.  THANKS FOR YOUR
```

1    PATIENCE.  I'M SORRY, WE GOT A LITTLE BIT DELAYED HERE BUT

2    I KNOW YOU LEARNED A LOT BY LISTENING TO SOME OF THOSE

3    CRIMINAL MATTERS.

4            MR. BUTZ:  DIFFERENT WORLD, YOUR HONOR.

5            THE COURT:  AND I'M SURE YOU ARE THANKING YOUR

6    LUCKY STARS THAT YOU DON'T HAVE TO DO THAT.  LET ME SAY

7    IT'S RARE WE HAVE SUCH A DISTINGUISHED GROUP OF LAWYERS

8    ASSEMBLED HERE AND WE LOOK FORWARD TO HEARING FROM EACH OF

9    YOU TODAY.  I WANT TO COMPLIMENT ALL THE LAWYERS ON THE

10   EXCELLENT BRIEFING.  I KNOW SOME OF YOU ARE NOT GOING TO

11   LIKE THE RESULT BUT THE BRIEFING WAS CERTAINLY THE TOP AND

12   VERY HELPFUL TO THE COURT.

13       I SEE WE ONLY HAVE ONE KIRBY HERE TODAY.  YOU ARE LUCKY

14   BECAUSE SOMETIMES WHEN YOU GET INVOLVED WITH HIS LAW FIRM,

15   HE CALLS OUT ALL OF HIS FAMILY AND YOU END UP FIGHTING WITH

16   TWO OR THREE KIRBYS.

17           MR. KIRBY:  THERE HAVE BEEN AS MANY AS THREE OF US

18   AT ONE TIME, YOUR HONOR.

19           THE COURT:  APPARENTLY THERE IS ONLY ONE OF THEM

20   TODAY.

21       I DID GET OUT A TENTATIVE RULING, DID EVERYBODY GET

22   THAT?

23           MR. HARDY:  YES.

24           MR. KIRBY:  YES.

25           THE COURT:  I WON'T REHASH OR READ THAT INTO THE

1    RECORD HERE OTHER THAN TO NOTE THAT JUST TO SET THIS UP FOR

2    THE RECORD, THE END RESULT IS THAT THE MOTION TO DISMISS IS

3    TENTATIVELY GRANTED AS TO EIGHTH CAUSE OF ACTION FOR UNFAIR

4    BUSINESS PRACTICES AND NINTH CAUSE OF ACTION FOR UNJUST

5    ENRICHMENT AND DENY, THE MOTIONS WERE DENIED AS TO THE

6    REMAINING CAUSES OF ACTION.  AND I WOULD NOTE THAT WHILE

7    THE DEFENDANTS CERTAINLY MAKE SOME STRONG ARGUMENTS WITH

8    RESPECT TO THE VIABILITY OF THE REMAINING CAUSES OF ACTION,

9    IT APPEARS TO THE COURT THAT THOSE ARGUMENTS GO MORE TOWARD

10   WHETHER THE CLAIMS CAN ULTIMATELY BE PROVED RATHER THAN

11   WHETHER THEY CAN BE ADEQUATELY PLED AT THIS STAGE.

12       AND AS WE ALL KNOW HERE, THE LAWYERS KNOW AT THIS

13   PRELIMINARY STAGE, ALL THE COURT IS EMPOWERED TO DO IS TO

14   DETERMINE WHETHER THE PLAINTIFFS HAVE SAID ENOUGH, NOT

15   WHETHER THEY CAN PROVE IT ULTIMATELY.  BUT WHETHER THEY HAVE

16   SAID ENOUGH TO GET OVER THE HUMP IN ALLEGING A PLAUSIBLE

17   LEGALLY COGNIZABLE CLAIM.

18       SO AS SUMMARIZED IN THE COURT'S TENTATIVE, IT APPEARS

19   TO THE COURT THAT THE PLAINTIFFS HAVE ALLEGED ENOUGH TO GET

20   OVER THAT INITIAL HUMP AND TO AVOID A MOTION TO DISMISS, AT

21   LEAST AS TO THE FIRST SEVEN CAUSES OF ACTION.

22       SO WITH THAT LEAD IN, THE DEFENDANT'S ARE NOW BEHIND BY

23   A SCORE OF SEVEN TO TWO.  AND IT'S THEIR MOTION ANYWAY, SO I

24   GUESS THEY WANT TO HEAR OR THEY WANT TO SPEAK FIRST AND

25   MR. KIRBY HAS ARISEN SO I EXPECT HE WANTS TO SPEAK FIRST.

1       MR. KIRBY:  THANK YOU, YOUR HONOR, I WILL.

2     YOUR HONOR, TO FOCUS THE ARGUMENT, I ONLY INTEND TO

3 ADDRESS SECTION A, POINTS ONE AND TWO, EXCUSE ME JUST POINT

4 ONE OF THE COURT'S TENTATIVE WHICH RELATES TO THE BREACH OF

5 CONTRACT.  YOUR HONOR, I'M NOT INTENDING TO CHALLENGE THE

6 COURT'S TENTATIVE RULING ON THE REST OF THE CLAIMS.

7     LET ME TELL YOU, YOUR HONOR, WHAT THE COURT TENTATIVE

8 SAID AND THE CONCERNS I HAVE.  THE COURT CORRECTLY NOTES IN

9 THE TENTATIVE THAT THE COMPLAINT DOES ALLEGE THAT DEFENDANT

10 ISLET SCIENCES ENTERED INTO A VALID AND ENFORCEABLE CONTRACT

11 WITH PLAINTIFF BY EXECUTING A PROMISORY NOTE ON MAY 17,

12 2010.  THAT'S A FACT.  IT WASN'T ATTACHED TO THE COMPLAINT.

13 WE ATTACHED IT FOR OPPOSITION AND THERE IS NO OBJECTION TO

14 THAT BEING BEFORE THE COURT.

15     BUT THE PROBLEM, YOUR HONOR, I THINK IS THAT, THEN IT

16 SAYS THAT THE PLAINTIFF PERFORMED ENOUGH BY PROVIDING

17 $357,000 WITH CASH TO ISLET AND EXPENDING MORE THAN $180,000

18 IN IDENTIFYING AND PURCHASING CORPORATE SHELLS.

19     AND YOUR HONOR, OUR OBJECTION WAS, FIRST OF ALL IT'S

20 CLEAR ON THIS RECORD, THERE IS BUT ONE WRITTEN CONTRACT

21 BETWEEN THESE TWO PARTIES AND THAT'S THE PROMISSORY NOTE.

22 THE OPPOSITION, YOUR HONOR, WHEN WE MADE THE ARGUMENT THAT

23 THERE'S NO CLAIM FOR BREACH OF CONTRACT HERE BECAUSE THERE'S

24 NOTHING IN THIS PROMISSORY NOTE THAT ADDRESSES BUYING

25 CORPORATE SHELLS ON A DOLLAR-FOR-DOLLAR BASIS.  PLAINTIFF

1  HAS COME BACK AND SAID, "WELL YES, BUT WE'RE GOING TO PROVE

2  THOSE TERMS BY ADMISSIBLE PAROLE EVIDENCE.  WE'RE GOING TO

3  PROVE BY PAROLE EVIDENCE THAT THE PARTIES AGREED THAT WE

4  COULD BUY CORPORATE SHELLS AND SATISFY OUR $500,000

5  OBLIGATION."

6      THE  PROBLEM WITH THAT, YOUR HONOR, IS IT COMPLETELY

7  EMASCULATES THE PAROLE EVIDENCE RULE.  THE PAROLE EVIDENCE

8  RULE AS WE ALL KNOW IS, IF YOU HAVE A WRITTEN CONTRACT

9  BETWEEN THE PARTIES AND THERE IS AN AMBIGUITY OR EVEN AN

10  ALLEGED AMBIGUITY, THE PARTIES ARE ENTITLED, IF THE COURT

11  FINDS AN AMBIGUITY, TO PRESENT AND THE COURT CAN CONSIDER

12  PAROLE EVIDENCE.  THE PROBLEM HERE, YOUR HONOR, IS WHAT

13  WE'RE REALLY LOOKING AT, I SUBMIT, AND WHAT IS NOT TREATED

14  IS A CLAIM FOR BREACH OF CONTRACT UNDER THE NOTE AND A CLAIM

15  FOR ORAL CONTRACT UNDER THE SUPPOSED AGREEMENT.

16      YOUR HONOR THE NOTE HAS AN INTEGRATION CLAUSE.  THE

17  NOTE SAYS IF YOU ARE GOING TO AMEND THIS AGREEMENT, IT HAS

18  TO BE IN WRITING SIGNED BY THE PARTIES AND PAROLE EVIDENCE,

19  YOUR HONOR, IS ADMISSIBLE TO EXPLAIN AN AMBIGUOUS TERM.  IT

20  IS NOT ADMISSIBLE TO REWRITE THE PARTIES CONTRACT AND THAT'S

21  WHAT THE ARGUMENT HERE IS.

22      YOUR HONOR, YOU CAN LOOK AT THIS CONTRACT.  FIRST OF

23  ALL, THE OPPOSITION DOESN'T POINT TO ANYTHING IN THE

24  CONTRACT THAT'S AMBIGUOUS.  THEREFORE YOUR HONOR, IT'S NOT

25  AN ISSUE OF PAROLE EVIDENCE.  I DON'T DISPUTE, I'LL MAKE

1 THIS CLEAR, IF THE PLAINTIFF WANTED TO AMEND THEIR COMPLAINT

2 AND SAY, WE'RE SUING YOU FOR BREACH OF WRITTEN CONTRACT AND

3 WE'RE SUING YOU FOR ORAL CONTRACT, THEY COULD PLEAD AN ORAL

4 CONTRACT, YOUR HONOR, FOR PURPOSES OF RULE 12. I DON'T

5 DISPUTE THAT.

6 BUT IT'S A BIG DIFFERENCE HERE TO SAY, WE'RE GOING TO

7 USE PAROLE EVIDENCE. I WOULD POINT OUT SOMETHING, YOUR

8 HONOR, IT'S NOT IN THE PAPERS, BUT I READ THE FILE THIS

9 WEEKEND AND AS YOU RECALL, THIS CASE WAS IN ARIZONA. THIS

10 CASE WAS FILED, THEN IT WAS AMENDED. IN THE FIRST AMENDED

11 COMPLAINT, IN 22 COUNTS, THERE IS NOT A CLAIM FOR BREACH OF

12 CONTRACT, YOUR HONOR. NOT A SINGLE CLAIM FOR BREACH OF

13 CONTRACT.

14 NOW IT IS, WE'RE GOING TO PROVE IT BY PAROLE EVIDENCE

15 AND OUR VIEW, YOUR HONOR, IS YOU DON'T GET TO PAROLE

16 EVIDENCE UNLESS YOU CAN POINT TO THE COURT AND SAY THIS TERM

17 IS AMBIGUOUS. AND I CAN GIVE THE COURT AN EXAMPLE. SUPPOSE

18 THE NOTE HAD SAID, SAND DOLLAR IS GOING TO PROVIDE $500,000

19 OF CASH OR OTHER CONSIDERATION. OKAY?

20 YOU CAN SAY, WELL THAT'S A LITTLE AMBIGUOUS, WHAT'S THE

21 OTHER CONSIDERATION HERE? THE COURT CAN SAY, I'M GOING TO

22 ENTERTAIN PAROLE EVIDENCE TO DECIDE WHAT THE PARTIES

23 INTENDED BY "OTHER CONSIDERATION." THERE IS NO SUCH

24 AMBIGUITY IN THE PROMISSORY NOTE, YOUR HONOR, WHICH IS WHY I

25 SUGGEST IT WASN'T ATTACHED TO THE COMPLAINT. THE PROMISSORY

1  NOTE IS A PROMISSORY NOTE.  IT'S NOT AMBIGUOUS.  IT'S NOT

2  VAGUE IT'S NOT A RESPONSE TO SAY, I GET TO VARY A WRITTEN

3  CONTRACT WITH AN INTEGRATION CLAUSE THAT REQUIRES WRITTEN

4  AMENDMENTS BY SAYING, I'M GOING TO BRING IN A BUNCH OF

5  PAROLE EVIDENCE BECAUSE YOUR HONOR IT IS A CLEAR DIFFERENCE

6  TO SAY, YOU ARE GOING TO LOAN US 500,000 IN CASH VERSUS YOU

7  ARE GOING TO LOAN US 350,000 IN CASH AND WE'RE GOING TO GO

8  OUT AND BUY CORPORATE SHELLS.  IF THAT TERM WHICH IS WHAT,

9  30 PERCENT OF THE CONSIDERATION, IF THAT TERM WERE AGREED

10  UPON, IT WOULD HAVE BEEN INCLUDED IN THE PROMISSORY NOTE.

11  IT WASN'T.

12      SO YOUR HONOR, IT'S NOT A PLAUSIBLE THEORY TO SAY

13  PAROLE EVIDENCE IS GOING TO SAVE THIS WRITTEN BREACH OF

14  CONTRACT CLAIM.  THE BREACH OF CONTRACT CLAIM IS LIMITED TO

15  A WRITTEN INTEGRATED CONTRACT.

16      YOUR HONOR, THE SECOND POINT AND LET ME POINT OUT, YOUR

17  HONOR, SOME OF THE SIGNIFICANCE OF THIS, THE WRITTEN

18  CONTRACT HAS AN ATTORNEY'S FEES CLAUSE.  AN ORAL CONTRACT

19  DOES NOT.  WE KNOW THAT.  WE'RE ENTITLED TO KNOW WHETHER

20  WE'RE BEING SUED FOR BREACH OF WRITTEN CONTRACT OR BREACH OF

21  ORAL CONTRACT OR BOTH.  BUT YOU CAN'T TAKE A WRITTEN

22  INTEGRATED CONTRACT BY PAROLE EVIDENCE WHERE THERE'S NO

23  AMBIGUITY AND SAY, I'M NOW GOING TO TACK ON AN ORAL

24  AGREEMENT.  IF YOU WANT TO SUE FOR ORAL AGREEMENT, YOUR

25  HONOR, I HAVE NO DOUBT THAT THEY CAN PLEAD THAT.  I CAN SAY

1    TO THE COURT, IF THEY PLEADED THE BREACH OF ORAL CONTRACT

2    FOR THIS CORPORATE SHELL HERE, I WOULDN'T FILE A RULE 12

3    MOTION ON THAT BECAUSE THE COURT WOULD HAVE TO TAKE IT AS

4    TRUE.  BUT THAT'S THE OBJECTION WE HAVE, FIRST TO THE

5    WRITTEN, BREACH OF WRITTEN CONTRACT.

6         THE SECOND THING, YOUR HONOR, THAT'S IMPORTANT AND I

7    UNDERSTAND THE COURT'S RULING THAT WE'RE NOT GOING TO GET

8    INTO DAN FORD'S EMAIL OF SEPTEMBER 10 AND THEY SAY, WELL WE

9    DIDN'T RELY ON THAT.  YOUR HONOR, THAT KIND OF MAKES A

10   MOCKERY OF THIS RULE IS IF YOU LOOK AT THE COMPLAINT, YOUR

11   HONOR, THE SECOND AMENDED COMPLAINT STARTING WITH I THINK

12   IT'S PARAGRAPH 97, MAYBE A LITTLE EARLIER THAN THAT, BUT IT

13   REALLY STARTS IN PARAGRAPH 70.  THEY GO THROUGH, YOUR HONOR,

14   DAY-BY-DAY, STARTING AS EARLY AS APRIL, PLEADING SPECIFIC

15   E-MAILS ONE AFTER THE OTHER AND CONSPICUOUSLY MISSING IS THE

16   ONLY E-MAIL THAT GOES TO THE ISSUE WE'RE TALKING ABOUT AND

17   THAT'S THE SEPTEMBER 4 E-MAIL FROM MR. FORD, DAN FORD.

18        AND YOUR HONOR, AGAIN, WE'RE NOT ASKING THE COURT TO

19   LOOK AT AN E-MAIL THAT ONE OF MY CLIENTS PREPARED AND SAY,

20   WELL LOOK AT THIS, JUDGE.  YOU OUGHT TO CONSIDER -- NO,

21   WE'RE SAYING, MR. FORD WROTE THE E-MAIL AND WHAT DID HE SAY

22   IN THE E-MAIL, YOUR HONOR, WHICH I THINK IS IMPORTANT IS AT

23   THAT POINT, IF THEY HAD GONE OUT TO BUY THE CORPORATE SHELL

24   VENTANA.  YOU WOULD EXPECT, GIVEN THIS THEORY OF WE HAVE AN

25   ORAL CONTRACT TO USE CORPORATE SHELLS, YOU WOULD EXPECT

1  MR. FORD'S E-MAIL TO SAY, PER OUR AGREEMENT, WE WENT OUT AND

2  BOUGHT THE CORPORATE SHELL OR PER THE AGREEMENT WE HAVE

3  REACHED WITH YOU, WE PAID PART -- NOT A WORD.  IN FACT, YOUR

4  HONOR, IT'S THE OPPOSITE.

5       HE SAYS, WITHOUT MY KNOWLEDGE, THEY WENT OUT AND BOUGHT

6  THESE CORPORATE SHELLS TO PROTECT OR COMFORT THEIR OWN

7  INVESTORS.  YOUR HONOR, I DON'T THINK YOU CAN IN GOOD FAITH,

8  GIVEN THE STANDARDS AND OBLIGATIONS OF LAWYER, PLEAD AT

9  LEAST, AT LEAST 12 TO 15 E-MAILS, AND THE ONE E-MAIL, THE

10  ONE E-MAIL THAT ADDRESSES WHY DID YOU BUY THE CORPORATE

11  SHELLS AND WHY ARE YOU TRYING TO STICK THEM ON MY CLIENT,

12  OMIT THAT E-MAIL.  THE AUTHENTICITY IS NOT DISPUTED.  THE

13  TIMING ISN'T DISPUTED.  SO YOUR HONOR, I RESPECTFULLY

14  SUBMIT, THAT E-MAIL SHOULD BE CONSIDERED BY THE COURT

15  BECAUSE IT MAKES A MOCKERY TO SAY, "WELL, WE DIDN'T RELY ON

16  IT."

17       WELL, YOUR HONOR, OF COURSE YOUR HONOR, NO PLAINTIFF

18  HAS EVER RELIED ON A DOCUMENT THAT UNDERCUTS HIS CASE.  I'VE

19  DONE ENOUGH PLAINTIFF WORK TO SPEAK TO THAT.  YOUR HONOR, IT

20  DOESN'T ADDRESS THE ISSUE TO SAY WELL, WE DIDN'T RELY ON

21  THAT EMAIL.  OF COURSE YOU DIDN'T BECAUSE IT DIRECTLY

22  DISPROVES YOUR CASE BUT IT GOES TO THE PLAUSIBILITY STANDARD

23  UNDER *TROMBLEY*.

24       DOES THIS MAKE SENSE WHEN YOU HAVE GOT ONE E-MAIL THAT

25  ADDRESSES, BECAUSE YOUR HONOR, THERE IS NOT A SINGLE EMAIL

1  THAT IS QUOTED, ATTACHED OR REFERENCED THAT SAYS, "AS YOU

2  KNOW, WE AGREED WE COULD BUY CORPORATE SHELLS."

3      SO YOUR HONOR, MY VIEW AND AGAIN, I ONLY WANT TO

4  ADDRESS THE BREACH OF CONTRACT CLAIM.  THEY HAVE NOT PLEADED

5  AROUND THE WRITTEN CONTRACT AND IF THEY'RE GOING TO

6  CONTEND -- AND HERE, YOUR HONOR, WHAT I WANT TO DO IS, I

7  DON'T WANT TO GET UP THE DAY OF TRIAL AND SAY SOMEHOW WE ARE

8  GOING TO MAKE A MOTION NOW TO AMEND.  IF THE COURT GRANTS A

9  MOTION IN LIMINE TO SAY, "I'M NOT CONSIDERING PAROLE

10 EVIDENCE TO INTERPRET THE NOTE, BECAUSE THERE'S NOTHING

11 AMBIGUOUS ABOUT IT FACING AN ORAL CONTRACT."  IF THEIR

12 THEORY IS THERE WAS A SEPARATE ORAL CONTRACT MADE, THEY CAN

13 PLEAD THAT AND THEY ARE LIMITED THEN TO THE WRITTEN CONTRACT

14 BUT I THINK, YOUR HONOR, HAVING SEEN THIS COMPLAINT QUITE,

15 MR. BUTZ AND I WORKED THE CASE IN ARIZONA, SOMEBODY

16 CONCLUDED THAT OUT OF 22 CLAIMS, NOT ONE OF THEM IS FOR

17 BREACH OF CONTRACT.  AND I THINK FOR GOOD REASON.

18      SO YOUR HONOR, I WOULD SUBMIT ON THAT ARGUMENT.  THANK

19 YOU.

20      THE COURT:  ALL RIGHT.  THANKS.  I GUESS,

21 MR. BUTZ, YOU DON'T NEED TO CHIME IN ON THAT ONE, DO YOU?

22      MR. BUTZ:  I DO NOT, YOUR HONOR, WE'RE NOT GOING

23 TO TALK ABOUT THE BREACH OF CONTRACT.  I THINK MAYBE I

24 SHOULD SIT DOWN AT THIS POINT AND LET PLAINTIFF RESPOND TO

25 MR. KIRBY'S REMARKS.

```
 1          THE COURT:  ALL RIGHT.  IT'S A RARE EVENT WHEN HE
 2    SAYS HE'S JUST GOING TO SIT DOWN AND KEEP QUIET SO WE
 3    BETTER TAKE HIM UP ON IT.
 4       SO HOW ABOUT THAT ON THE BREACH OF CONTRACT CLAIM?
 5          MR. HARDY:  THANK YOU, YOUR HONOR.  I WOULD JUST
 6    ADDRESS MR. KIRBY'S POINTS.  WE DON'T QUIBBLE WITH ANYTHING
 7    ELSE IN THE TENTATIVE ORDER.  WITH RESPECT TO THE
 8    INTEGRATION CLAUSE, HE SAYS "WE NEED TO FOCUS ON THE FOUR
 9    CORNER OF THE AGREEMENT."  WELL, BY DOING THAT, YOU ARE
10    IGNORING WHAT THE PARTIES DID IN FACT AGREE TO AND HOW THEY
11    PERFORMED ON THE NOTE.  I NEED TO ADD, THIS TERM IS
12    CONSISTENT WITH THE WRITTEN TERMS OF THE NOTE.  THE AMOUNT
13    IS UNDISPUTED.  $500,000.
14       IT IS HOW DID WE GET TO THAT AMOUNT AND WE'RE GOING TO
15    PROVE THAT THROUGH TESTIMONIAL EVIDENCE, DOCUMENTARY
16    EVIDENCE AND EVIDENCE, OF COURSE, OF PERFORMANCE.  NOW IN
17    TALKING ABOUT THE PAROLE EVIDENCE RULE, THEY DON'T ADDRESS
18    THE CASES WE CITED IN OUR BRIEF THAT SAY, PAROLE EVIDENCE IS
19    THE PARTIES ACTUAL CONSIDERATION IS ALWAYS ACCEPTABLE.  HOW
20    DID YOU GET TO THE $500,000?
21       ADDITIONALLY, COURSE OF PERFORMANCE IS ALWAYS ACCEPTED
22    BECAUSE IT'S THE BEST EVIDENCE OF WHAT THE PARTIES DID IN
23    FACT AGREE TO.  NOW YOUR HONOR, ONE OF THE THINGS THEY'RE
24    DISPUTING, IF YOU SAY, OKAY, WELL, THE WHOLE AGREEMENT AS A
25    CONSIDERATION HAS TO BE IN THE NOTE.  THERE IS ANOTHER TERM
```

WITH RESPECT TO THE CASH PAYMENT, $357,000. IT DOESN'T SAY
ANYTHING IN THE NOTE ABOUT INSTALLMENT PAYMENTS BUT THAT'S
IN FACT WHAT DID HAPPEN. WITHIN A WEEK OR SO OF EXECUTING
THE NOTE IN MAY, MY CLIENTS FIRST FORWARDED THE FIRST
INSTALLMENT. THERE WERE THREE OR FOUR OTHER INSTALLMENTS
FOR THE NEXT 90 DAYS. THAT'S HOW THEY GOT TO $357,000. IT
DOESN'T SAY SO IN THE NOTE BUT THAT'S WHAT THE PARTIES DID
IN FACT DO AND THAT IS THE BEST EVIDENCE OF THE AGREEMENT.

IT'S ALSO EVIDENCE THAT THE ENTIRE AGREEMENT, AS TO THE
FORM THAT THAT $500,000 WAS TO TAKE WAS NOT DOCUMENTED IN
THE WRITTEN TERMS OF THE NOTE.

WITH RESPECT TO THIS E-MAIL, I THINK WE NEED TO MAKE
THREE POINTS. FIRST FACTUALLY, I THINK ANY FAIR READING OF
THE E-MAIL LEADS TO THE CONCLUSION THAT IT DOESN'T PROVE
ANYTHING. FOR ME IT RAISES MORE QUESTIONS THAN ANSWERS.
WE'RE MISSING SOME CONTEXT. THE VERY FIRST SENTENCE OF THE
NOTE REFERS TO A CONVERSATION THEY HAD A PREVIOUS DAY. WHAT
WAS SAID IN THAT CONVERSATION. WE NEED DISCOVERY ON THAT.
WERE THERE ANY NOTES TAKEN?

SECOND, IT'S CLEAR FROM THE TEXT OF THAT E-MAIL THAT
THIS VENTANA CORPORATION WAS IN FACT PURCHASED FOR THE
REASON WE SAID IT WAS PURCHASED. FOR A REVERSE MERGER WITH
ISLET SCIENCE TO TAKE ISLET PUBLIC.

NOW THIRD, MR. FORD IS CLEARLY SPEAKING OUT OF TERMS.
IF YOU READ THIS E-MAIL, THIS ISN'T THE KIND OF EMAIL THAT

1  COMES FROM SOMEBODY WHO IS SPEAKING AS AN AUTHORIZED AGENT

2  OF THE COMPANY.  UNBEKNOWNST TO ME, HE IS OUT OF THE LOOP

3  AND HE'S BASICALLY SPEAKING AS A PERSON WHO IS NOT SPEAKING

4  AS AN AGENT OF THE CORPORATION.

5       NOW YOUR HONOR, THE NOTION THAT EVERY OTHER E-MAIL THAT

6  WAS EXCHANGED BETWEEN THE PARTIES IS IN THE PLEADING IS

7  INCORRECT.  WE HAVE A UNIVERSE HERE OF DOZENS, IF NOT

8  HUNDREDS OF COMMUNICATIONS, MANY OF THEM WERE PUT INTO THE

9  COMPLAINT.  THIS PARTICULAR E-MAIL WASN'T, BECAUSE THE FIRST

10 TIME I EVER SAW IT WAS IN THEIR MOTION AND I THINK THAT GOES

11 TO THE REST OF THE MEMBERS OF SAND DOLLAR AS WELL.  AS I

12 SAID, MR. FORD WAS SPEAKING OUT OF TURN.

13      ADDITIONALLY, YOUR HONOR, I THINK WE NEED TO LOOK AT IT

14 FROM A LEGAL POLICY PERSPECTIVE.  WE HAVE A LOT OF

15 COMMERCIAL LITIGATION CASES WITH LARGE UNIVERSES OF

16 COMMUNICATIONS THAT GENERALLY FRAME THE PARTIES' DISPUTE BUT

17 WHEN YOU ARE TALKING ABOUT A DOCUMENT THAT WASN'T RELIED

18 UPON, THAT WASN'T MENTIONED NOWHERE IN THE COMPLAINT, JUST

19 TO SAY THAT IT'S INCORPORATED BECAUSE IT BELONGS IN THAT

20 UNIVERSE, THAT'S A BRIDGE TOO FAR, YOUR HONOR, AND I THINK

21 THAT'S ALL I HAVE.

22      THE COURT:  LET ME, BEFORE WE HEAR AGAIN FROM

23 MR. KIRBY, HE LED US INTO LAW SCHOOL 101 WITH PAROLE

24 EVIDENCE AND INTEGRATED AGREEMENTS AND ALL THAT STUFF.  DO

25 YOU CONCEDE THAT THIS WAS AN INTEGRATED AGREEMENT?

1      MR. HARDY:  YES, IT WAS AN INTEGRATED AGREEMENT

2    BUT THE TERM WE'RE TALKING ABOUT IS CONSISTENT WITH THE

3    AMOUNT OF CONSIDERATION.  IT'S JUST THE FORM THAT THAT'S TO

4    TAKE.  AND THE RULE AS STATED IN **BOWMAN** IS THAT PAROLE

5    EVIDENCE OF THE ACTUAL CONSIDERATION, THE FORM THAT THAT

6    CONSIDERATION WAS TO TAKE IS ALWAYS ACCEPTABLE.

7      THE COURT:  THE -- THERE'S SOME, NOT TO UNDERCUT

8    YOUR POSITION OR WHAT YOU JUST SAID BUT THERE WAS A

9    SIGNIFICANT ISSUE IN MY MIND AS TO WHETHER THIS IS WHAT WE

10   WOULD CLASSICALLY CALL AN INTEGRATED AGREEMENT.

11      TYPICALLY WHEN WE TALK ABOUT INTEGRATED AGREEMENTS, WE

12   MEAN AGREEMENTS THAT ARE ON THEIR FACE INTENDED TO BE A

13   COMPLETE AND FINAL EXPRESSION OF THE PARTIES AGREEMENT.

14   THIS IS NOT THAT.  I MEAN, IT SAYS NO ORAL CHANGE AND

15   WHATNOT BUT IT SORT OF CONTEMPLATES THERE'S GOING TO BE A

16   CHANGE AND IT CONTEMPLATES, NO THIS IS PROBABLY NOT THE

17   FINAL AGREEMENT.  SO I THINK THERE'S AN ISSUE THERE.

18      CERTAINLY IT'S NOT A CLASSIC INTEGRATION CLAUSE AND I

19   EXPECT NO LAWYER IN THIS ROOM WROTE THIS CLAUSE, RIGHT?  SO

20   I HOPE I'M NOT STEPPING ON ANYBODY'S TOES.  BUT WHOEVER

21   WROTE IT HADN'T BEEN LOOKING AT THE HORN BOOK ON INTEGRATION

22   AGREEMENTS, SO I THINK IT IS NOT A CLASSIC INTEGRATION

23   CLAUSE, BUT EVEN IF IT WAS, EVEN IF IT WERE, THAT DOESN'T

24   END IT BECAUSE CALIFORNIA LAW, AS WE KNOW, ALLOWS A PARTY TO

25   INTRODUCE EVIDENCE OF A PARTIES COURSE OF PERFORMANCE AND

1  THAT'S THE  POINT THAT YOU WERE MAKING TO INTERPRET THE

2  TERMS, EVEN OF AN INTEGRATED CONTRACT.

3      SO WE HAVE ISSUES WITH THAT AND ALSO WITH PAROLE

4  EVIDENCE.  I ALWAYS ENJOY THE PAROLE EVIDENCE ARGUMENT

5  BECAUSE I DON'T KNOW IF IT'S STILL A RULE.  WE HAVE SO MANY

6  EXCEPTIONS TO THE RULE.  BUT ONE THING, I GUESS IS PRETTY

7  CLEAR, PAROLE EVIDENCE APPLIES TO STUFF THAT HAPPENED BEFORE

8  THE CONTRACT, NOT AFTER.  AND I GUESS WE'RE TALKING ABOUT

9  ALLEGEDLY STUFF THAT HAPPENED AFTER.  AND IF WE'RE LOOKING

10  AT AMBIGUITY, MR. KIRBY TAKES THE POSITION THAT WELL, IT'S

11  NOT AMBIGUOUS SO WE SHOULDN'T BE LOOKING AT PAROLE EVIDENCE

12  ANYWAY.

13      IT LOOKS TO ME, I WOULD RESPECTFULLY DISAGREE WITH

14  THAT.  I SEE LOTS OF AMBIGUITIES IN THIS THING.  SIMPLE

15  THINGS LIKE THIS $500,000.  IT SAYS ISLET WOULD PAY SAND

16  DOLLAR $500,000 FOR VALUE RECEIVED.  WE'RE TALKING ABOUT PAY

17  BACK.  IT DOESN'T SAY ANYTHING ABOUT WHAT I GOT.  I MEAN,

18  DID I GET CASH?  WHAT DID I GET?  DID I GET 500,000 CASE,

19  DID I GET $500,000 CASH AND SERVICES, CASH AND PRODUCT?

20  WHAT DID I GET?  SO THAT'S AMBIGUOUS TO ME.

21      SO I SEE SOME ISSUES WITH AMBIGUITY.  I SEE SOME ISSUES

22  WITH WHETHER IT IS TRULY AND INTEGRATED AGREEMENT AND AGAIN,

23  EVEN IF IT IS UNDER CALIFORNIA LAW, WE TYPICALLY PERMIT

24  EVIDENCE OF COURSE OF CONDUCT AFTER THE FACT TO EXPLAIN EVEN

25  THE TERMS OF EVEN AN INTEGRATED AGREEMENT.

```
1        SO I GOT ALL THOSE ISSUES HERE AND I FEEL LIKE I'M
2   ARGUING YOUR CASE FOR YOU.
3            MR. HARDY:  SOUNDS PRETTY GOOD TO ME.
4            THE COURT:  I PROBABLY SHOULDN'T.  SO YOU THINK
5    IT'S AN INTEGRATED AGREEMENT?
6            MR. HARDY:  IT'S AN INTEGRATION CLAUSE.  RIGHT.
7    THERE IS AN INTEGRATION CLAUSE, BUT I AGREE WITH ALL
8    THE COURT'S POINTS AS FAR AS THE FACT, THE FULL AGREEMENT
9    IS NOT IN THE FOUR CORNERS OF THAT NOTE.
10           THE COURT:  WELL SURE BECAUSE I'M TRYING TO HELP
11   YOU OUT SO YOU ARE AGREEING WITH THAT PART OF IT.
12       ON THE OTHER -- ON THE E-MAIL THING, I APPRECIATE THE
13   STRENGTH OF MR. KIRBY AND I SHOULD SAY, ALSO THE LOGIC, YOU
14   KNOW, OF THE ARGUMENT BUT I THINK THAT'S SORT OF NOT REALLY
15   A CLOSE ISSUE.  I MEAN IT'S NOT SOMETHING THAT TYPICALLY CAN
16   BE INCORPORATED BY REFERENCE INTO THE CONTRACT FOR
17   THE PURPOSES OF THIS MOTION AND I'M COMFORTABLE WITH THAT
18   ALTHOUGH I APPRECIATE THE LOGIC OF THE ARGUMENT.  WHAT IF
19   THEY JUST ON PURPOSE LEFT THIS ONE THING OUT, FROM ALL
20   THE OTHER ONES THAT THEY'RE TALKING ABOUT.  BUT I THINK
21   UNDER THE LAW, I THINK I JUST CAN'T CONSIDER THAT HERE IN
22   THE CONTEXT OF THIS MOTION.  I'M SURE WE'LL PROBABLY BE
23   TALKING LATER ABOUT SUMMARY JUDGMENT AND SOME OTHER THINGS
24   AND MAYBE WELL BE CONSIDERING ALL THESE ISSUES AGAIN.
25       SO, I GUESS WHAT I'M DOING IS PLAYING DEVILS ADVOCATE
```

1  NOW SO MR. KIRBY CAN STAND BACK UP AND TELL ME HOW COME I'M
2  WRONG AND MAYBE HE'S RIGHT.
3          MR. KIRBY:  I'LL ATTEMPT DO THAT, YOUR HONOR.
4  YOUR HONOR, IN TERMS OF AN INTEGRATED AGREEMENT, IF THE
5  PARTIES SIMPLY INTENDED THAT SAND DOLLAR WAS GOING TO LOAN
6  $500,000 TO ISLET SCIENCES AND INTENDED THAT UPON THAT LOAN
7  SAND DOLLAR COULD LATER, LATER CONVERT THAT TO STOCK,
8  THAT'S ALL SPELLED OUT.  THAT'S ALL SPELLED OUT IN THE
9  AGREEMENT.  AND YOUR HONOR, IN TERMS OF WELL, WHERE DID
10 THIS NUMBER, HOW IS IT CLEAR?  THE COMPLAINT ALLEGES, YOUR
11 HONOR, THAT AND I'M LOOKING AT PARAGRAPH 38 OF THE SECOND
12 AMENDED COMPLAINT THAT A CONFIDENTIAL POWER POINT
13 PRESENTATION WAS MADE BY THE DEFENDANTS.  AND IT SAYS THAT
14 THE CONFIDENTIAL POWER POINT PRESENTATION REPRESENTED THAT
15 $500,000 BRIDGE FINANCING WAS NEEDED.  OKAY?  SO THAT
16 EXPLAINS IT.
17     THEN IN PARAGRAPH 46, ON OR ABOUT MAY THIRD, DEFENDANT
18 STEEL ELECTRONICALLY TRANSMITTED A FORM OF PROMISSORY NOTE
19 TO DAN FORD, HE WHO SPEAKS OUT OF TURN, TO BE EXECUTED
20 WHEREBY, DEFENDANT AS BOX, ISLET SCIENCES, AS BORROWER WOULD
21 BORROW A PRINCIPLE SUM OF $500,000 FROM SAND DOLLAR.
22 THERE'S NOT MUCH AMBIGUOUS ABOUT THAT, YOUR HONOR.  THEY
23 WERE GOING TO LOAN $500,000 AND YOUR HONOR, ISLET SCIENCES
24 HAS TAKEN THAT POSITION ALL LONG.
25     OF COURSE WE MADE AN AGREEMENT.  IT'S IN WRITING, WE

```
 1   WERE GOING TO BORROW $500,000 IN CASH.  THERE IS NO E-MAIL
 2   ATTACHED.  THERE IS NOTHING HERE TO SHOW THAT SUBSEQUENT,
 3   AND AGAIN, YOUR HONOR, YOU GOT TO, YOU CAN SAY WELL IF SOME
 4   OF THIS WASN'T INTENDED, WE HAVE ALREADY HAD A CONCESSION
 5   THAT IT'S AN INTEGRATED AGREEMENT AND AS TO A $500,000 LOAN,
 6   YOUR HONOR IT CLEARLY IS, WHAT TERM IS MISSING WHEN
 7   SOMEBODY, AND THEY ALREADY PLEADED, WE TOLD THEM WE NEEDED
 8   $500,000 DOLLARS IN BRIDGE FINANCING.  THAT'S IN THE
 9   COMPLAINT.  THEY SAID, HERE IS A PROMISSORY NOTE WHEREBY
10   YOU, ISLET WOULD BORROW 500,000 FROM SAND DOLLAR.
11        YOUR HONOR, THE ESSENTIAL TERMS OF A LOAN ARE ALL SET
12   FORTH AND IN FAIRNESS, A RIGHT TO CONVERT THAT LOAN
13   TO STOCK.  THERE DOESN'T NEED TO BE ANYTHING ELSE.  IT'S
14   THIS, WE MADE A SUBSEQUENT AGREEMENT THAT WE WERE GOING TO
15   PAY IT IN SOMETHING OTHER THAN CASH AND THAT'S BEEN
16   DISPUTED, YOUR HONOR, BY ISLET SCIENCES FROM DAY ONE.
17        THERE'S NEVER BEEN AN AGREEMENT AND TELLINGLY, I WOULD
18   SUBMIT, THERE IS NOT AN EMAIL.  I UNDERSTAND WE'RE NOT GOING
19   TO DAN FORD'S E-MAIL, BUT THERE IS NOT AN EMAIL THAT SAYS
20   THIS WILL CONFIRM OUR AGREEMENT.  NOW WE KNOW SENDING A
21   SELF-SERVING E-MAIL DOESN'T MAKE IT AN AGREEMENT BUT THERE'S
22   NOT EVEN THAT ALLEGED IN THIS COMPLAINT.  THAT SOMEBODY SENT
23   AN E-MAIL THAT SAID, AS YOU KNOW, WE HAVE AN AGREEMENT THAT
24   WE GET TO USE THESE SHELLS TO BUY SHELLS.  THE OTHER THING,
25   YOUR HONOR, ON THAT SUBSEQUENT ORAL CONTRACT, WHERE WOULD
```

1    THE DAMAGES BE?  IF THEY GO OUT AND BUY A CORPORATE SHELL,

2    PRESUMABLY THEY ARE GOING TO HAVE TO SAY THAT THEY BOUGHT IT

3    FOR FAIR MARKET VALUE.  THEY STILL OWN THE SHELLS.  THEY'RE

4    NOT OUT OF POCKET MONEY, YOUR HONOR.

5    I CAN GIVE YOU AN EXAMPLE, IT IS PROBABLY NOT A GOOD

6    ONE BUT IT OCCURRED TO ME DRIVING OVER HERE.  IF SAND DOLLAR

7    SAID, YOU KNOW WHAT?  WE REALLY THINK THAT THE EXECUTIVES OF

8    ISLET OUGHT TO LOOK A LITTLE SHARPER AND MORE PROSPEROUS SO

9    WE WENT OUT AND BOUGHT FIVE ROLEX WRIST WATCHES FOR $30,000

10    A PIECE.  OF COURSE, WE'RE GOING TO APPLY THAT $150,000 TO

11    OUR CASH OBLIGATION, ISLET SCIENCES WOULD SAY NO.  WE NEVER

12    MADE THAT AGREEMENT.

13    YOUR HONOR, YOU CAN'T JUST GO OUT, AGAIN, AND CHANGE A

14    PROMISSORY NOTE.  IF THEY'RE GOING TO ALLEGE AN ORAL

15    CONTRACT.  BUT THAT'S NOT WHAT THIS WRITTEN CONTRACT SAYS.

16    AND I THINK COUNSEL, FIRST TIME WE AGREED, IT IS AN

17    INTEGRATED AGREEMENT AS TO A $500,000 LOAN.

18    LIKE I SAID, IF IT SAID THE NATURE OF THE CONSIDERATION

19    TO BE DETERMINED, THE KIND OF CONSIDERATION OR IF IT SAID

20    $500,000 TO CONSIST OF CASH AND OTHER CONSIDERATION, BINGO.

21    THAT'S AN AMBIGUITY IN THE FACE OF THE AGREEMENT.  BUT IT

22    DOESN'T SAY THAT, YOUR HONOR.

23    SO YOUR HONOR, I RESPECT THE COURT'S VIEWS AND I THINK

24    I HAVE MADE MINE BEYOND THIS, I'D JUST BE BEATING A DEAD

25    HORSE AND YOU KNOW WHAT THEY SAY, IT DOESN'T HURT THE HORSE

1 BUT I'M GOING TO SIT DOWN.

2     THE COURT: ALL RIGHT. THANKS. ANYTHING YOU WANT

3 TO ADD THAT WE HAVEN'T ALREADY SAID ON THE CONTRACT ISSUE?

4     MR. HARDY: YEAH. THE PAROLE EVIDENCE RULE, I

5 HAVE A CASE IN FRONT OF YOU, ***BEGGARLY VERSUS GABOR, A 1980***

6 ***CASE, 12 CAL APP 3RD, 180.*** NOW THE PAROLE EVIDENCE RULE

7 PRECLUDES EXTRINSIC EVIDENCE OF PRIOR CONTEMPORARY

8 AGREEMENTS THAT CONTRADICT, VARY OR ADD TO THE INTEGRATED

9 WRITING. IT DOES NOT RELATE TO FUTURE AGREEMENTS AND DOES

10 NOT BAR EXTRINSIC EVIDENCE THAT PROVES THE PARTIES

11 SUBSEQUENTLY MODIFIED THEIR INTEGRATED WRITING.

12     I THINK THAT GOES TO HIS FIRST POINT.

13     AS TO DAMAGES, PLAINTIFFS DIDN'T GET THEIR STOCK AND

14 EVEN IF YOU SAY THERE WAS SOME FORMULA WHERE THEY SHOULD GET

15 STOCK FOR THE CASH PAYMENTS THAT THEY GAVE, THEY GAVE

16 $357,000 ON $500,000 AND THEY HOLD ABOUT 9 PERCENT OF THE

17 FULLY DILUTED COMMON STOCK OF ISLET SCIENTISTS. THEY SHOULD

18 IF YOU WERE GOING TO APPLY SOME OTHER FORMULA THAT DOESN'T

19 REALLY EXIST, THEY SHOULD HAVE CLOSER TO 18 PERCENT. THEY

20 DIDN'T GET THE STOCK. THEY DIDN'T GET THE BOARD SEAT,

21 THE DAMAGES ARE SELF-EVIDENT. THANK YOU, YOUR HONOR.

22     THE COURT: ALL RIGHT. MR. BUTZ IS ANXIOUSLY

23 AWAITING HIS TURN AT THE LECTURN. MR. BUTZ.

24     MR. BUTZ: TO BE AS ECONOMICAL AS I CAN, YOUR

25 HONOR, MAY I DIRECT A QUESTION TO PLAINTIFF'S COUNSEL IN

1    THE COURT'S PRESENCE WHICH MAY BEAR UPON THE LENGTH OF MY

2    ARGUMENT?

3            THE COURT:  WELL I DON'T KNOW.  ARE YOU GOING TO

4    PUT HIM ON THE SPOT?

5            MR. BUTZ:  WELL IT'S A FOLLOW ON TO COMMENT MADE

6    BY COUNSEL WHICH I THINK HE SAID SOMETHING TO THE EFFECT

7    THEY'RE GOING TO SUBMIT AS TO THE BALANCE OF ORDER?

8            MR. HARDY:  YEAH.  WE'RE NOT GOING TO CHALLENGE

9    THE 17200 UNJUST ENRICHMENT RULINGS.

10           MR. BUTZ:  THAT WAS THE POINT OF MY QUESTION, YOUR

11   HONOR, SO IF THEY'RE NOT GOING TO ARGUE AGAINST THE

12   TENTATIVE ON THAT, THEN WE'LL SUBMIT AND I WON'T TAKE UP

13   THE COURT'S TIME ARGUING THE EIGHTH CAUSE OF ACTION.

14           THE COURT:  ALL RIGHT.

15           MR. BUTZ:  WHAT I WOULD LIKE TO ADDRESS THOUGH,

16   YOUR HONOR, IF I MAY, IS THE FOURTH CAUSE OF ACTION FOR

17   BREACH OF FIDUCIARY DUTY.  AND AS WITH THE SEVENTH CAUSE OF

18   ACTION, YOUR HONOR, FOR SECURITIES FRAUD, WE UNDERSTAND

19   THE COURT'S REASONING AND DON'T TAKE ISSUE WITH

20   THE SUBSTANCE OF THE RULING ON EITHER CAUSE OF ACTION.

21       HOWEVER, AND WITH THE COURT'S INDULGENCE, I'D LIKE TO

22   TALK TO THE COURT FOR A MOMENT ABOUT THE CONTENT OF THE

23   COURT'S RULING ON THE FIDUCIARY DUTY CLAIM.

24       AND IN PARTICULAR, YOUR HONOR, I'M FOCUSED ON THE

25   SECOND SENTENCE IN THE COURT'S TENTATIVE RULING ON THE

1    FIDUCIARY DUTY CLAIM WHICH APPEARS AT PAGE FIVE, LINES SEVEN

2    THROUGH EIGHT OF THE RULING, WHICH READS AS FOLLOWS:  QUOTE,

3    "THE COURT FINDS THAT WHETHER UNDER DELAWARE OR CALIFORNIA

4    LAW, DEFENDANT KINKELAAR, AS SOLE INCORPORATOR OF DEFENDANT

5    ISLET OWED FIDUCIARY DUTY TO PLAINTIFF."  CLOSE QUOTE.

6         AT THIS EARLY STAGE OF THE CASE, YOUR HONOR, I'M VERY

7    VERY CONCERNED THAT DOWN THE ROAD, THAT STATEMENT WOULD BE

8    ARGUED AS THE LAW OF THIS CASE.  IT IS A VERY BROAD AND

9    SWEEPING STATEMENT UPON THE SUBJECT OF DUTY, WHICH I'M

10   CONCERNED WILL BE ARGUED DOWN THE ROAD AS THE LAW OF THIS

11   CASE AND I WOULD BE ARGUING AGAINST IT, WHEN IN FACT IT IS

12   SPECIFIC TO THE ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

13   ONLY.

14        THE COURT:  WELL YOU NEED NOT WORRY ABOUT LAW OF

15   THE CASE IN A SENSE OF ME BEING BOUND BY THE WORDS THAT I

16   PUT IN THIS TENTATIVE RULING NOW, BECAUSE WE'RE JUST

17   DEALING WITH THE MOTION HERE.  SO I THINK YOU NEED NOT BE

18   CONCERNED WITH THAT.

19        I THINK THE POINT AND I GUESS WE PUT THIS IN HERE TOO,

20   THE POINT AT LEAST FROM THE COURT'S STANDPOINT, IS REALLY

21   MORE SPECIFIC AND THAT IS REALLY THE LEGISLATIVE COMMENT,

22   THE CORPORATIONS CODE SECTION 210, SEEMS TO BE PRETTY CLEAR

23   WITH REGARD TO THE AUTHORITY AND THE RESPONSIBILITY OF AN

24   INCORPORATOR.

25        MR. BUTZ:  WELL, I THINK THAT'S RIGHT, YOUR HONOR,

 1  BUT WITH ALL DUE RESPECT TO THE COURT, I WOULD RESPECTFULLY

 2  SUGGEST THAT THE ORDER IS PERFECTLY CLEAR WITHOUT THAT

 3  SENTENCE IN IT AND THAT SENTENCE IS UNNECESSARY TO THE

 4  RULING BEFORE THE COURT AND WOULD ASK THE COURT SIMPLY TO

 5  DELETE THAT SENTENCE OR TO MODIFY IT IN A WAY THAT MAKES IT

 6  SPECIFIC TO THE FACTUAL EVENTS AND TIMING SET FORTH IN THE

 7  SECOND AMENDED COMPLAINT FOR THIS VERY IMPORTANT REASON.

 8      WE OBVIOUSLY HAVEN'T BEGUN DISCOVERY IN THIS CASE AND

 9  SO PLAINTIFFS COUNSEL PROBABLY IS NOT AWARE OF A FACT WHICH

10  IS IMPORTANT.  THAT IS THIS, MR. KINKELAAR WAS

11  THE INCORPORATOR ON MAY 4TH.  THE CONVERSION OF THE NOTE

12  TOOK PLACE IN SEPTEMBER 15 AND IT IS ALLEGED IN THE SECOND

13  AMENDED COMPLAINT THAT MR. KINKELAAR REMAINED LIABLE AS THE

14  SOLE INCORPORATOR OF THE CORPORATION UP UNTIL THE TIME

15  THE CONVERSION TOOK PLACE BECAUSE NO BOARD OF DIRECTORS

16  MEETING TOOK PLACE.

17      IN FACT, DISCOVERY WILL REVEAL THAT A BOARD OF

18  DIRECTORS MEETING TOOK PLACE ON AUGUST 28 OF 2010 AT WHICH

19  POINT MR. KINKELAAR WAS NO LONGER THE INCORPORATOR BECAUSE A

20  BOARD OF DIRECTORS WAS ELECTED.  I'M NOT ARGUING THAT IN

21  OPPOSITION TO THE MOTION, BECAUSE THEY HAVE NOT ALLEGED THAT

22  A BOARD OF DIRECTORS MEETING IN THEIR COMPLAINT, BUT I'M

23  ARGUING TO ILLUSTRATE HOW THIS BROAD STATEMENT IN

24  A TENTATIVE RULING COULD BE DIFFICULT TO ARGUE AGAINST WHEN

25  IN FACT, IT WOULD BE EASY TO POINT OUT THERE WAS NO

1 FIDUCIARY DUTY OWED AS OF THE TIME THE CONVERSION TOOK PLACE

2 BECAUSE KINKELAAR HAD NOT BEEN A DIRECTOR OF THIS

3 CORPORATION OR AN INCORPORATOR FOR SEVERAL WEEKS.  SO THAT

4 IS AT THE ROOT OF MY CONCERN OVER THIS BROAD AND SWEEPING

5 STATEMENT, THAT WE WOULD FINDS OURSELVES ARGUING AGAINST

6 DOWN THE ROAD AS AN APPARENT ORDER AND SIMPLY ASK THE COURT

7 TO CONSIDER JUST DELETING THAT SENTENCE AS BEING UNNECESSARY

8 TO THE ORDER OR AMENDING IT IN A WAY TO MAKE CERTAIN THAT

9 THAT COMMENT ON THE LAW IS SPECIFIC TO THE TIMING AND THE

10 EVENTS ALLEGED IN THE SECOND AMENDED COMPLAINT WHICH OF

11 COURSE DOES NOT INCLUDE THAT VERY IMPORTANT BOARD OF

12 DIRECTORS MEETING.

13          THE COURT:  ALL RIGHT.  LET ME -- I ALWAYS HATE TO

14 ADMIT THAT WHEN MR. BUTZ SAYS SOMETHING THAT ACTUALLY SORT

15 OF MAKES SENSE, YOU KNOW.  WHAT ABOUT THAT?  I THINK WE

16 COULD ELIMINATE THAT ONE SENTENCE WITHOUT DOING VIOLENCE AT

17 ALL TO THE ORDER AND TO THE OVERALL RULING AND AS I LOOK AT

18 IT, UPON PRELIMINARY MOTION THE COURT MAKING THIS BROAD

19 SWEEPING FINDING AS TO THE FIDUCIARY DUTY MAYBE A LITTLE

20 OVERKILL.  I THINK THE POINT IS SIMPLY AS INDICATED IN THE

21 REST OF THAT PORTION OF THE TENTATIVE THAT IT APPEARS TO

22 THE COURT THAT PURSUANT TO CORPORATION CODE SECTION 210 AN

23 INCORPORATOR DOES HAVE THE AUTHORITY AND RESPONSIBILITY TO

24 RUN THE CORPORATION UNTIL THE BOARD IS ELECTED SO I WOULD

25 TENTATIVELY THINK THAT MAYBE MR. BUTZ IS RIGHT AND I SHOULD

1    JUST ELIMINATE THAT ONE SENTENCE.

2         MR. HARDY:  I HAVE TWO PROBLEMS WITH THAT.

3    THE FIRST IS THAT, FIRST IS THE TERM OF THE FACTUAL RECORD.

4    I'M NOT SURE WHAT MR. BUTZ WAS REFERRING TO IN TERMS OF THE

5    CONVERSION AND THE OPERATIVE EVENTS BECAUSE THE MONEY WAS

6    BEING TENDERED OVER IN MAY AND JUNE, SO THAT WOULD HAVE

7    BEEN WHILE HE WAS STILL INCORPORATOR.  BUT AS TO THE --

8         THE COURT:  IRRESPECTIVE OF THAT, I MEAN,

9    OBVIOUSLY WE'RE NOT DETERMINING THE FACTS HERE AND WE

10   HAVEN'T DONE DISCOVERY.  I APPRECIATE THAT BUT IT SEEMS TO

11   ME IF THAT SECOND SENTENCE WERE SIMPLY ELIMINATED, IT

12   WOULDN'T CHANGE THE RULING AT ALL AND IT WOULD BACK OFF

13   FROM MAKING SOME OVERARCHING RULING OF LAW.

14        MR. HARDY:  YOU KNOW, I THINK BECAUSE THE COUNT IS

15   FOR FIDUCIARY DUTY CLAIM, I THINK IT WOULD BE HELPFUL TO

16   KEEP THE SENTENCE IN THERE BUT PERHAPS QUALIFY IT, FINDS

17   THAT SOMETHING LIKE THE COMPLAINT THAT UNDER DELAWARE AND

18   CALIFORNIA LAW, MAYBE AFTER THAT, THE COMPLAINT

19   SUFFICIENTLY LY SETS OUT THAT DEFENDANT OWED FIDUCIARY

20   DUTIES TO PLAINTIFF OR SOMETHING LIKE THAT.

21        THE COURT:  I GUESS -- WHAT DO YOU CARE?  AS LONG

22   AS YOU WIN THE MOTION?

23        MR. HARDY:  WELL THERE'S THAT, YOUR HONOR.  JUST

24   BECAUSE, I GUESS THE FIRST -- IT DEPENDS ON WHAT

25   THE FIRST -- IF THE ULTIMATE RULING JUST TAKES OUT

1  TENTATIVELY IN THE FIRST SENTENCE, THEN THAT WOULD PROBABLY

2  BE OKAY.  I WAS KIND OF ASSUMING THAT THE FIRST SENTENCE

3  MIGHT BE GONE.  BUT IF IT STAYS IN WITHOUT THE TENTATIVELY

4  IT PROBABLY DOES WHAT NEEDS TO BE DONE.

5         THE COURT:  SO JUST TO BUTTON UP, SO IF WE TAKE

6  THAT SECOND SENTENCE OUT, YOU'RE OKAY?  IT DOES NOT CHANGE

7  ANYTHING.

8         MR. HARDY:  YEAH, I CAN LIVE WITH THAT, YOUR

9  HONOR.

10         THE COURT:  MR. BUTZ, YOU MADE A POINT, I GUESS.

11  HE'S EVEN AGREED WITH THAT.

12         MR. BUTZ:  HE'S A NICE MAN.

13         THE COURT:  ARE YOU GETTING ALONG ALL RIGHT WITH

14  THESE GUYS 'CAUSE SOMETIMES THEY'RE A LITTLE DIFFICULT.

15         MR. HARDY:  WE BELONG TO THE SAME ORGANIZATION

16  THAT HAS A SECRET HANDSHAKE SO EVERYTHING IS COOL WITH US.

17         MR. BUTZ:  I HAVE NOTHING FURTHER, YOUR HONOR,

18  WITH THAT.

19         THE COURT:  WE INTERRUPTED YOU.  YOU WERE GOING TO

20  SAY SOMETHING ELSE, I GUESS, OTHER THAN JUST --

21         MR. BUTZ:  I HAVE NOTHING MORE TO SAY, YOUR HONOR,

22  OTHER THAN THANK YOU FOR LETTING US COME OVER AND APPEAR IN

23  YOUR COURTROOM.

24         THE COURT:  ALL RIGHT.  WELL, THANK YOU FOR

25  COMING.  IT'S NICE TO BE SEEN.  I DON'T MEAN TO CUT OFF THE

1   DEBATE, BUT MY TENTATIVE THOUGHT NOW WOULD BE TO SIMPLY

2   CONFIRM THE TENTATIVE RULING WITH THE EXCEPTION JUST

3   DISCUSSED OF ELIMINATING THAT ONE SENTENCE ON PAGE FIVE AND

4   NOT ISSUE A FULL ON, FULL BLOWN FURTHER ORDER.  I DON'T

5   THINK IT'S NECESSARY ON THIS MOTION ON THIS RECORD.

6          BUT I WANT TO MAKE SURE THE RECORD IS COMPLETE, I KNOW

7   MR. KIRBY DOESN'T LIKE THE TENTATIVE.  SO ANYTHING ELSE YOU

8   WANT TO ADD THAT YOU HAVE ALREADY SAID.

9          MR. KIRBY:  YOUR HONOR, I THINK I COVERED IT ALL.

10  THANK YOU VERY MUCH.  I GOT A FAIR HEARING.

11         THE COURT:  ALL RIGHT.  ANYTHING ELSE WE CAN DO

12  TODAY?

13         MR. HARDY:  NO.

14         THE COURT:  ALL RIGHT.  THANKS VERY MUCH FOR THE

15  ARGUMENTS.  OH, MR. BUTZ?

16         MR. BUTZ:  WE DON'T NEED AN AMENDED COMPLAINT AND

17  I'M NOT HEARING THE COURT MAKE ANY REFERENCE TO THAT.

18         THE COURT:  YEAH.  LET ME CLEAR THAT.  MY THOUGHT

19  IS THE EIGHT AND NINTH CAUSES OF ACTION, THE MOTION IS

20  GRANTED WITH PREJUDICE, I GUESS.  YOU CAN'T STATE A CLAIM

21  UNDER EITHER OF THOSE, CAN YOU?

22         MR. HARDY:  NO.

23         THE COURT:  SO THOSE CLAIMS ARE ELIMINATED AND

24  THERE IS NO AMENDED COMPLAINT IN THE PICTURE.

25         MR. BUTZ:  CORRECT.  MAY WE THEN HAVE 20 DAYS IN

1    WHICH TO PREPARE OUR ANSWER TO THE COMPLAINT.

2            THE COURT:  THAT SEEMS REASONABLE.

3            MR. HARDY:  NO OBJECTION.

4            THE COURT:  ALL RIGHT.  WE'LL DO THAT.

5        THANKS, FOLKS.  SEE YOU LATER.

6

7

8                    C-E-R-T-I-F-I-C-A-T-E

9        I, ELIZABETH M. CESENA, CSR 12266, AN OFFICIAL
     REPORTER OF THE UNITED STATES DISTRICT COURT, SOUTHERN
10   DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT I REPORTED IN
     SHORTHAND THE PROCEEDINGS, TO THE BEST OF MY ABILITY, IN THE
11   ABOVE-ENTITLED CAUSE AND THAT THE FOREGOING TRANSCRIPT IS A
     FULL, TRUE AND CORRECT TRANSCRIPT OF PROCEEDINGS HELD ON
12   APRIL 15, 2013.
         SAN DIEGO, CALIFORNIA, DATED THIS 5TH DAY OF MAY, 2013.
13

14                    /S/ ELIZABETH CESENA
                 _____
15
                      ELIZABETH M. CESENA, CSR 12266
16                    OFFICIAL COURT REPORTER

17

18

19

20

21

22

23

24

25

        ELIZABETH CESENA, CSR 12266, (619) 237-0100
              UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF CALIFORNIA